PILLSBURY WINTHROP SHAW PITTMAN LLP
ANNE M. VOIGTS (220783)
anne.voigts@pillsburylaw.com
2400 Hanover Street
Palo Alto, CA 94304-1115
Telephone:    650.233.4500
Facsimile:    650.233.4545

LAURA C. HURTADO (267044)
laura.hurtado@pillsburylaw.com
KAYVAN M. GHAFFARI (299152)
kayvan.ghaffari@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone:    415.983.1000
Facsimile:    415.983.1200

Attorneys for Defendant
BYTEDANCE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| TED ENTERTAINMENT, INC., MATT FISHER, and GOLFHOLICS, INC., each individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BYTEDANCE INC.,<br><br>Defendant. | Case No. 5:25-CV-10933<br><br>**DEFENDANT BYTEDANCE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*[Filed concurrently with [Proposed] Order]*<br><br>Date: August 6, 2026<br>Time: 10:00 A.M.<br>Judge: Jacqueline Scott Corley<br><br>Complaint Filed: December 23, 2025 |

-1-
PLAINTIFF ROBLOX CORPORATION'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION
Case No: 3:25-CV-01139-MMC

4907-3579-4284.v1
4902-8788-9030.v2

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 6, 2026, at 10 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8 of the United States District Court located at 450 Golden Gate Avenue, San Francisco, CA 94102 before the Honorable Jacqueline Scott Corley, Defendant Bytedance Inc. ("BDI"), by and through its counsel of record, hereby moves this Court to dismiss with prejudice the Complaint (ECF No. 1) ("Complaint" or "Compl.") filed by Plaintiffs Ted Entertainment, Inc., Matt Fisher and Golfholics, Inc. ("Plaintiffs").

BDI brings this motion under (1) Federal Rule of Civil Procedure 12(b)(1) and (b)(6) because Plaintiffs lack both Article III and statutory standing to pursue their only cause of action, asserting a violation of 17 U.S.C. § 1201(a), the anti-circumvention provision of the Digital Millennium Copyright Act ("DMCA"); and (2) Federal Rule of Civil Procedure 12(b)(6) because that cause of action fails to state a claim upon which relief can be granted.

This motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, all pleadings and papers on file in this action, and such other matters as may be presented to the Court at the hearing.

Dated: March 31, 2026        Respectfully submitted,

PILLSBURY WINTHROP SHAW PITTMAN LLP

*/s/Anne M. Voigts*
ANNE M. VOIGTS (220783)
LAURA C. HURTADO (267044)
KAYVAN M. GHAFFARI (299152)

Attorneys for Defendant,
BYTEDANCE INC.

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION..............................................................................................................1

II.  BACKGROUND ..............................................................................................................3

III. LEGAL STANDARD ......................................................................................................4

IV.  ARGUMENT....................................................................................................................5

    A.   Plaintiffs Lack Standing........................................................................................5

        1.   Plaintiffs Lack Article III Standing..........................................................5

        2.   Plaintiffs Lack Statutory Standing ...........................................................8

    B.   Plaintiffs Fail To State A Claim Under Section 1201(a)(1) ...................................10

        1.   Congress Intentionally Differentiated Between Access Controls and Copy Controls ...........................................................................................11

        2.   Plaintiffs Have Not Alleged an Access Control Within the Meaning of Section 1201(a)(1) ...................................................................................14

            a.   Plaintiffs Allege Copy Controls, Not Access Controls........................14

            b.   The Specific TPMs Plaintiffs Identify Do Not Control Access...........17

        3.   The Complaint Fails to Allege that BDI Itself Circumvented Any Technological Measure, Especially In The United States, Inside the Statute of Limitations..................................................................................18

V.   CONCLUSION ................................................................................................................20

DEFENDANT BYTEDANCE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No: 5:25-CV-10933

TABLE OF AUTHORITIES

Page(s)

Cases

*Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*,
No. 18-CV-2897 (JPO), 2018 WL 2022626 (S.D.N.Y. Apr. 30, 2018) ..................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................................5

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988) .................................................................................................5

*Barnum Timber Co. v. U.S. Env'tl. Prot. Agency*,
633 F.3d 894 (9th Cir. 2011) .................................................................................................4

*Bartz v. Anthropic PBC*,
787 F. Supp. 3d 1007 (N.D. Cal. 2025) .................................................................................8

*RJ Control Consultants, Inc. v. Multiject, LLC*,
100 F.4th 659 (6th Cir. 2024) ..............................................................................................18

*Callahan v. Ancestry.com Inc.*,
No. 20-CV-08437-LB, 2021 WL 2433893 (N.D. Cal. June 15, 2021) ....................................6

*CDK Glob., LLC v. Tekion Corp.*,
No. 25-cv-01394-JSC, 2025 WL 1939951 (N.D. Cal. July 15, 2025)....................................12

*City & Cnty. of San Francisco v. Whitaker*,
357 F. Supp. 3d 931 (N.D. Cal. 2018) ...................................................................................7

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)................................................................................................................7

*Cordova v. Huneault*,
No. 25-cv-04685-VKD, 2026 WL 184598 (N.D. Cal. Jan. 23, 2026)....................................18

*CouponCabin LLC v. Savings.com, Inc.*,
No. 2:14-CV-39-TLS, 2016 WL 3181826 (N.D. Ind. June 8, 2016) .....................................17

*Dish Network L.L.C. v. World Cable Inc.*
893 F. Supp. 2d 452, (E.D.N.Y. 2012) .................................................................................18

*Disney Enters., Inc. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) ................................................................................................13

DEFENDANT BYTEDANCE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No: 5:25-CV-10933

*Doe 1 v. GitHub, Inc.*
672 F. Supp. 3d 837 (N.D. Cal. 2023) ...............................................................................6

*Dow Jones & Co. Inc. v. Juwai Ltd.*,
No. 21-cv-7284 (PKC), 2023 WL 2561588 (S.D.N.Y. Mar. 17, 2023) ...................................20

*Echostar Satellite, L.L.C. v. Viewtech, Inc.*,
543 F. Supp. 2d 1201 (S.D. Cal. 2008)...............................................................................9

*United States v. Elcom Ltd.*,
Rep. No. 105, at 11 (1998)........................................................................................11, 19

*FMHUB, LLC v. MuniPlatform, LLC*,
No. 19-15595 (FLW), 2021 WL 1422873 (D.N.J. Apr. 15, 2021)...........................................15

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ...........................................................................................5

*Hattler v. Ashton*,
No. LA CV16-04099, 2017 WL 11634742 (C.D. Cal. Apr. 20, 2017) .......................... *passim*

*Huynh v. Chase Manhattan Bank*,
465 F.3d 992 (9th Cir. 2006) ..........................................................................................20

*Kadrey v. Meta Platforms, Inc.*,
788 F. Supp. 3d 1026 (N.D. Cal. 2025) .............................................................................8

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
387 F.3d 522 (6th Cir. 2004) ....................................................................................14, 18

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
83 F. Supp. 3d 501 (S.D.N.Y. 2015)................................................................................15

*Low v. LinkedIn Corp.*,
No. 11-CV-01468-LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011)................................7

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)...........................................................................................4, 5, 8

*M.S. v. Brown*,
902 F.3d 1076 (9th Cir. 2018) ...........................................................................................8

*In re Maxim Integrated Prods., Inc.*,
No. 12-244, 2013 WL 12141373 (W.D. Pa. Mar. 19, 2013) ..................................................18

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) ...........................................................................................4

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
629 F.3d 928 (9th Cir. 2010), *as amended on denial of reh'g* (Feb. 17, 2011) ............... *passim*

*Media Rights Techs., Inc. v. Microsoft Corp.*,
922 F.3d 1014 (9th Cir. 2019) ...................................................................................20

*MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*,
622 F.3d 361 (5th Cir. 2010) ...................................................................16, 19, 20

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010).................................................................................................19

*Nintendo of Am., Inc. v. Chan*,
No. CV 09-4203, 2009 WL 2190186 (C.D. Cal. July 21, 2009) ..............................13

*Papasan v. Allain*,
478 U.S. 265 (1986)...................................................................................................5

*Raw Story Media, Inc. v. OpenAI, Inc.*,
756 F. Supp. 3d 1 (S.D.N.Y. 2024) ......................................................................6, 8

*RealNetworks, Inc. v. Streambox, Inc.*,
No. 2:99CV02070, 2000 WL 127311 (W.D. Wash. Jan. 18, 2000) ........................11

*Smith v. Radius Glob. Sols, LLC*,
No. 5:22-cv-02259-RGK-SP, 2023 WL 6373874 (C.D. Cal. Sept. 25, 2023) .........6

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)...........................................................................................5, 6, 8

*State Street Glob. Advisors Tr. Co. v. Visbal*,
431 F. Supp. 3d 322 (S.D.N.Y. 2020)......................................................................20

*Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*,
No. 23-55001, 2024 WL 3616945 (9th Cir. Aug. 1, 2024) ......................................19

*Synopsys, Inc. v. InnoGrit, Corp.*,
No. 19-CV-02082-LHK, 2019 WL 4848387 (N.D. Cal. Oct. 1, 2019)....................12

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
No. 17-cv-00561-WHO (LB), 2018 WL 577941 (N.D. Cal. Jan. 29, 2018) ............19

*Ted Entertainment, Inc., Matt Fisher, and Golfholics, Inc. v. Meta Platforms, Inc.*,
No. 25-cv-10931-JST (N.D. Cal. filed Dec. 23, 2025)..............................................1

*Ted Entertainment, Inc., Matt Fisher, and Golfholics, Inc., v. Nvidia Corporation*,
No. 25-cv-10287-EJD (N.D. Cal. filed Nov. 26, 2025).............................................1

-v-

*Ted Entertainment, Inc., Matt Fisher, and Golfholics, Inc. v. Snap Inc.*,
    No. 26-cv-00754-AB (C.D. Cal. filed Jan. 23, 2026) ..............................................................1

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ...........................................................................................................5, 6, 7

*Universal City Studios, Inc. v. Corley*,
    273 F.3d 429 (2d Cir. 2001) ....................................................................................................14

*Universal City Studios, Inc. v. Reimerdes*,
    111 F. Supp. 2d 294 (S.D.N.Y. 2000) ....................................................................................14

*VidAngel LLC v. ClearPlay, Inc.*,
    703 F. Supp. 3d 1329 (D. Utah 2023) .................................................................................9, 10

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
    592 F.3d 954 (9th Cir. 2010) ..................................................................................................20

*Warth v. Seldin*,
    422 U.S. 490 (1975) ...........................................................................................................6, 10

*Y.H. v. Blizzard Ent., Inc.*,
    No. 8:22-CV-00998-SSS-ADSx, 2024 WL 5431490 (C.D. Cal. Aug. 14, 2024) .....................6

*Yout LLC v. Recording Industry Association of America, Inc.*,
    633 F. Supp. 3d 650 (D. Conn. 2022), *appeal pending*, No. 22-760 (2d Cir.) ........................18

<u>Statutes and Codes</u>

United States Code
    Title 17 Section 106 ................................................................................................................13
    Title 17 Section 106(1)–(5) ......................................................................................................7
    Title 17 Section 507(b) ...........................................................................................................20
    Title 17 Section 1201 ................................................................................................................9
    Title 17 Section 1201(a) .................................................................................................. *passim*
    Title 17 Section 1201(a)(1) .............................................................................................. *passim*
    Title 17 Section 1201(a)(1)(A) ........................................................................................ *passim*
    Title 17 Section 1201(a)(1)(B)–(D) ..................................................................................11, 13
    Title 17 Section 1201(a)(2) ................................................................................................12, 14
    Title 17 Section 1201(a)(2)(A) ...............................................................................................12
    Title 17 Section 1201(a)(3)(B) ........................................................................................ *passim*
    Title 17 Section 1201(b) ...........................................................................................11, 12, 13, 14
    Title 17 Section 1201(b)(1)(A) ...............................................................................................13
    Title 17 Section 1203 ..............................................................................................................10
    Title 17 Section 1203(a) .......................................................................................................8, 9
    Title 17 Section 1203(a) .................................................................................................. *passim*

DEFENDANT BYTEDANCE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No: 5:25-CV-10933

<u>Rules and Regulations</u>

Federal Rule of Civil Procedure
  Section 8(a)(2) ...................................................................................................................5
  Section 12(b)(1) ...........................................................................................................1, 4, 6
  Section 12(b)(6) ...................................................................................................................1
  Section 12(b)(6) .........................................................................................................1, 4, 20

<u>Other Authorities</u>

*The Digital Millennium Copyright Act of 1998: U.S. Copyright Off. Summary*, at 4 (Dec. 1998),
  https://www.copyright.gov/legislation/dmca.pdf....................................................................11

*Section 1201 of Title 17: A Report of the Register of Copyrights* (June 2017), available at
  https://www.copyright.gov/policy/1201/section-1201-full-report.pdf ....................................12

DEFENDANT BYTEDANCE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No: 5:25-CV-10933

**STATEMENT OF ISSUES TO BE DECIDED**

1.    Whether this Court should dismiss the Complaint for lack of standing under Federal Rule of Civil Procedure 12(b)(1) or (b)(6).

2.    Whether this Court should dismiss Plaintiffs' first (and only) cause of action alleging a violation of the Digital Millennium Copyright Act's ("DMCA's") anti-circumvention provisions, 17 U.S.C. § 1201(a), for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This Court should dismiss the Complaint filed by Plaintiffs Ted Entertainment, Inc., Matt Fisher, and Golfholics, Inc. for lack of standing and failure to state a claim. This is one of four suits (and counting) brought by the same group of plaintiffs against various developers of artificial intelligence ("AI") video generation models.[1] While there has been no shortage of copyright lawsuits filed against AI companies, Plaintiffs here are differently situated. Because any copyright claim Plaintiffs might assert would face a slew of hurdles including the lack of copyright registrations and fair use, Plaintiffs resort to a novel theory: that training AI models on YouTube videos violates the DMCA's anti-circumvention provision, 17 U.S.C. § 1201(a). That theory is supported by little more than Plaintiffs' conclusory speculation that, in order to obtain copies of their YouTube videos to use for AI training, Bytedance Inc. ("BDI") and others must have unlawfully circumvented YouTube's restrictions on video downloading. This theory is both factually incorrect and legally deficient, for several reasons.

*First*, Plaintiffs lack both Article III and statutory standing. Plaintiffs have failed to allege Article III standing because they have not pled a concrete injury that is traceable to BDI and redressable in part because the sorts of injuries they allege sound in copyright infringement, not Section 1201(a). Plaintiffs have also failed to allege statutory standing because the technological

---

[1] *Ted Entertainment, Inc., Matt Fisher, and Golfholics, Inc., v. Nvidia Corporation*, No. 25-cv-10287-EJD (N.D. Cal. filed Nov. 26, 2025); *Ted Entertainment, Inc., Matt Fisher, and Golfholics, Inc. v. Meta Platforms, Inc.,* No. 25-cv-10931-JST (N.D. Cal. filed Dec. 23, 2025); *Ted Entertainment, Inc., Matt Fisher, and Golfholics, Inc. v. Snap Inc.*, No. 26-cv-00754-AB (C.D. Cal. filed Jan. 23, 2026).

protection measures ("TPM") Plaintiffs allege were unlawfully circumvented belong to YouTube, not Plaintiffs, and Plaintiffs have not alleged that those measures, "in the ordinary course of its operation, require[] the application of information, or a process or a treatment, *with the authority of the copyright owner*." 17 U.S.C. § 1201(a)(3)(B) (emphasis added).

*Second*, Plaintiffs cannot state a claim under Section 1201(a) because that provision only prohibits circumvention of technological measures that "effectively control *access*" to a copyrighted work. But the YouTube measures on which Plaintiffs' claim depends do not restrict "access" to YouTube videos in any way. To the contrary, as Plaintiffs themselves concede, those videos can be accessed by anyone who wants to view them, for free, without a password, paywall, or any other barrier to viewing. Compl. ¶ 33. Instead, YouTube's anti-downloading measures restrict the public from downloading *copies* of the videos. That makes them "copy controls," not "access controls"— and as more than two decades of case law confirm, the DMCA does not prohibit circumvention of copy controls.

*Third*, Plaintiffs fail to allege that BDI itself circumvented any TPM, that any act of circumvention occurred inside the United States, or that any such act occurred inside the statute of limitations. Even if YouTube's measures were access controls within the meaning of Section 1201(a)—and they are not—Section 1201(a)(1) only targets the *act* of circumventing, not its aftereffects. Here, the Complaint does not allege that BDI itself circumvented access controls, much less that the act of circumventing YouTube's anti-downloading controls took place in the United States. Instead, it alleges that BDI used a pre-existing dataset compiled by Microsoft Research Asia and open-source downloading tools created by third parties. Compl. ¶¶ 65, 75. That alleges at best downstream use of materials *after circumvention has occurred*—which falls well outside of Section 1201(a)(1)'s scope. Beyond that, it is well established that U.S. copyright laws—including the DMCA—do not apply to activity taking place abroad. Absent a plausible allegation that BDI engaged in circumvention in the United States, the Complaint fails to state a claim for this reason too. Finally, Plaintiffs' own allegations suggest that the statute of limitations has run for any act of circumvention and they have not offered any explanation that would warrant tolling that statute.

For all of these reasons, Plaintiffs' Complaint should be dismissed.

## II.    BACKGROUND

Plaintiffs Ted Entertainment, Inc. ("TEI"), Matt Fisher, and Golfholics, Inc. are content creators who uploaded videos to YouTube, the free, publicly accessible online video-sharing platform owned and operated by Google LLC.  Compl. ¶¶ 11–14, 18–22, 33. TEI operates the YouTube channels "h3h3 Productions" and "H3 Podcast Highlights" and claims over 5,800 original videos with approximately 4 billion combined views.  Compl. ¶¶ 11, 18–19. Matt Fisher operates the channel "@Mr.ShortGame" with over 500,000 subscribers, Compl. ¶¶ 12, 21; and Golfholics, Inc. operates the channel "@Golfholics" with over 130,000 subscribers.  Compl. ¶¶ 13, 22.

Defendant BDI is a Delaware corporation headquartered in San Jose, California.  Compl. ¶ 23. Plaintiffs allege that BDI developed "MagicVideo," an AI model designed to generate video content from text and image inputs.  Compl. ¶¶ 2, 46.

Plaintiffs allege that BDI trained MagicVideo using video data obtained from YouTube. Compl. ¶¶ 1, 47.  Specifically, Plaintiffs allege that BDI used the "HD-VILA-100M" dataset, an academic dataset compiled by Microsoft Research Asia in 2021 that contains pointers—namely, URLs, video identifiers, and timestamp boundaries—to approximately 100 million clips drawn from 3,098,462 unique YouTube videos (the "dataset").  Compl. ¶¶ 56–57, 65.  Plaintiffs allege that Microsoft Research Asia created the dataset for academic research and that it was made available through a publicly accessible online code-sharing platform called GitHub.  Compl. ¶¶ 58–60, 65. The dataset, however, does not contain the actual video files.  Compl. ¶¶ 56–57, 62, 70.  Accordingly, Plaintiffs allege any user of the dataset must retrieve the referenced content from YouTube itself.  *Id*. ¶¶ 62–64.  As critically relevant here, Plaintiffs concede that those YouTube videos are publicly viewable by anyone with an internet connection, for free, without a password, paywall, or any other barrier to viewing. Compl. ¶ 33. Plaintiffs never allege that anything had to be (or was) decrypted, descrambled, or disabled to view the videos.

Instead, Plaintiffs allege that to use the dataset, BDI had to download the referenced videos directly from YouTube, and that BDI did so by using "tools and processes such as the open-source

-3-

DEFENDANT BYTEDANCE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No: 5:25-CV-10933

YouTube video downloader 'yt-dlp'[2] combined with virtual machines that refresh IP addresses." Compl. ¶ 75.  Plaintiffs allege that these tools and processes were "designed to evade YouTube's access protections" and "avoid being blocked by YouTube." Compl. ¶¶ 4, 75. Specifically, Plaintiffs allege that YouTube does not provide a readily available download option, periodically updates its APIs, monitors IP addresses for high-volume activity, and prohibits scraping and bulk extraction in its Terms of Service.  Compl.  ¶¶ 40–43, 35.  Plaintiffs assert that these are "technological protection measures ('TPMs') designed to control access."  Compl. ¶ 34.

Although Plaintiffs generally allege that BDI downloaded their videos and others, they do not allege when, where, or by whom any such downloading occurred, nor do they allege that any such downloading or circumvention occurred within the United States.

Based on these allegations, Plaintiffs filed this putative nationwide class action on December 23, 2025, asserting a single cause of action for violation of the anti-circumvention provision of the DMCA, 17 U.S.C. § 1201(a).  Compl. ¶¶ 114–123.  Plaintiffs seek certification of a class defined as: "[a]ll persons in the United States who uploaded original videos to YouTube and whose videos (or material portions thereof) were included in the HD-VILA-100M dataset scraped and downloaded by Defendant."  Compl. ¶ 102.

### III.    LEGAL STANDARD

Under Rule 12(b)(1), plaintiffs bear the burden of establishing subject matter jurisdiction, including Article III standing.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Accordingly, at the motion to dismiss stage, plaintiffs must allege "specific facts plausibly explaining" why the standing requirements are met.  *Barnum Timber Co. v. U.S. Env'tl. Prot. Agency*, 633 F.3d 894, 899 (9th Cir. 2011).   While lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Rule 12(b)(1), lack of statutory standing is evaluated under Rule 12(b)(6) for failure to state a claim.  *See Maya v. Centex Corp.,* 658 F.3d 1060, 1067 (9th Cir. 2011).

Under Rule 12(b)(6), "[d]ismissal [of a complaint] can be based on the lack of a cognizable

---

[2] "yt-dlp" is a free, open-source command-line program used to download video and audio files from YouTube and other online platforms.  It is publicly available on GitHub, a widely used code-sharing platform, and is a successor to an earlier program known as "youtube-dl."  *See* Compl. ¶¶ 75, 77–78.

DEFENDANT BYTEDANCE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No: 5:25-CV-10933

legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). The Court must disregard any "legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), as well as any "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

## IV.    ARGUMENT

### A.    Plaintiffs Lack Standing

#### 1.    Plaintiffs Lack Article III Standing

To establish Article III standing, Plaintiffs must allege three elements: "(i) . . . an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). These are the irreducible minimum constitutional requirements, and "Congress's creation of a statutory prohibition or obligation and a cause of action" cannot dilute them, let alone "relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III . . . ." *Id.* at 426. Plaintiffs, as the party invoking federal jurisdiction, bear the burden of alleging and ultimately establishing each element of Article III standing. *See Lujan*, 504 U.S. at 561. Plaintiffs, as the party invoking federal jurisdiction, bear the burden of alleging and ultimately establishing each element of Article III standing. *See Lujan*, 504 U.S. at 561. Plaintiffs have not met that burden here.

Take the first prong: "[E]ven in the context of a statutory violation," "Article III standing requires a concrete injury…." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 341 (2016). To be "concrete," an injury must be "real, and not abstract." *TransUnion*, 594 U.S. at 424 (quoting *Spokeo*, 578 U.S. at 340). While both tangible and intangible harms can be concrete injuries, for intangible harms to be

sufficiently "concrete," the injury must have "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts."[3] *Id.* at 425.

Under *Spokeo*, Plaintiffs cannot simply point to the alleged DMCA violation to establish the requisite injury.  578 U.S. at 341.  Instead, Plaintiffs must allege both actionable circumvention (the alleged statutory violation) *and* a real-world harm flowing from that circumvention.  *Id.*; *see*, *e.g.*, *Raw Story Media, Inc. v. OpenAI, Inc.*, 756 F. Supp. 3d 1, 6 (S.D.N.Y. 2024) (DMCA plaintiffs lacked Article III standing where they failed to allege any "*actual* adverse effects stemming from" the violation); *Callahan v. Ancestry.com Inc.*, No. 20-CV-08437-LB, 2021 WL 2433893, at *5 (N.D. Cal. June 15, 2021) (granting motion to dismiss for lack of Article III standing because "for injury in fact, there must be a concrete injury in additional [sic] to a statutory violation" and plaintiffs alleged unauthorized commercial use of their data but no harm beyond the statutory violation itself); *Y.H. v. Blizzard Ent., Inc.*, No. 8:22-CV-00998-SSS-ADSx, 2024 WL 5431490, at *4 (C.D. Cal. Aug. 14, 2024) (dismissing at summary judgment under Rule 12(b)(1) where "'[a]n alleged statutory violation[, by itself,] does not amount to an' injury in fact" and plaintiff failed to demonstrate any concrete harm independent of the statutory violation) (second alteration in original) (quoting *Smith v. Radius Glob. Sols, LLC*, No. 5:22-cv-02259-RGK-SP, 2023 WL 6373874, at *2 (C.D. Cal. Sept. 25, 2023)); *see also Doe 1 v. GitHub, Inc.* 672 F. Supp. 3d 837, 849 (N.D. Cal. 2023) ("In a putative class action, named plaintiffs 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'") (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

Here, even if Plaintiffs had sufficiently pled a statutory violation (and they have not), they have not alleged *any* real-world harm that they have suffered that flows from the alleged circumvention of YouTube's TPMs: Plaintiffs allege no lost revenue, no diminished licensing value, and no concrete economic consequences.  For example, in the section of the Complaint entitled *"Defendants' Actions Caused Harm to Plaintiffs and Class Members*," Plaintiffs vaguely assert only that BDI acted without

---

[3] Tangible harms are physical or monetary harms, and intangible harms include "reputational harms, disclosure of private information, and intrusion upon seclusion," as well as harms identified by the Constitution, such as infringement of free speech or free exercise rights.  *Id.* at 425.

their "authorization" and did not provide "compensat[ion]"—pointing to nothing concrete about what, if any, actual harm the alleged circumvention caused. Compl. ¶¶ 97-100. Similarly, the allegation that BDI "harvested content creators' protected and copyrighted videos at scale without consent or compensation" (Compl. ¶ 7) is insufficient absent facts showing a concrete real-world consequence to Plaintiffs. *See City & Cnty. of San Francisco v. Whitaker*, 357 F. Supp. 3d 931, 950 (N.D. Cal. 2018) (rejecting Article III standing because "plaintiffs cannot merely assert that the challenged action will cause economic harm without articulating a theory of harm that is not overly speculative"); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (standing theory premised on a "speculative chain of possibilities" does not satisfy Article III); *Low v. LinkedIn Corp.*, No. 11-CV-01468-LHK, 2011 WL 5509848, at *4 (N.D. Cal. Nov. 11, 2011) (plaintiff's economic harm theory "too abstract and hypothetical to support Article III standing" where plaintiff alleged valuable data was collected without compensation but failed to show he was actually foreclosed from capitalizing on its value).

To the extent Plaintiffs are implying that their injury is a loss of control over their intellectual property or a lost opportunity to license that for purposes such as AI training, those injuries sound in copyright infringement, not the DMCA. 17 U.S.C. § 106(1)–(5). Section 1201(a) created a distinct, and at the time novel, anti-circumvention right, separate from traditional copyright infringement. *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 950 (9th Cir. 2010), *opinion amended and superseded on denial of reh'g,* No. 09-15932, 2011 WL 538748 (9th Cir. Feb. 17, 2011). Because the only claim here arises under Section 1201(a)(1)'s anti-circumvention provision, Plaintiffs cannot establish Article III injury by pointing to future harms that, if actionable (or even remotely particularized) at all, arise from alleged unauthorized copying, derivative use, or lost licensing value not the act of circumvention itself. *TransUnion*, 549 U.S. at 441 ("[T]he risk of future harm on its own does not support Article III standing for the plaintiffs' damages claim.").

To be clear, Plaintiffs have no copyright claim here because they have not registered their works, and even more importantly, because using copyrighted materials to train AI is not copyright infringement. As courts have recognized, that kind of use is both extraordinarily transformative and

quintessential fair use. *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1033 (N.D. Cal. 2025); *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1059–60 (N.D. Cal. 2025). This is why Plaintiffs have resorted to their novel DMCA theory, not copyright. But to proceed under their DMCA theory, Plaintiffs must allege both circumvention (the alleged statutory violation) *and* a real-world harm flowing from that circumvention. *Spokeo*, 578 U.S. at 342 (plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation"); *see*, *e.g.*, *Raw Story Media*, 756 F. Supp. 3d at 6 (DMCA plaintiffs lacked Article III standing where they failed to allege any "actual adverse effects stemming from" the violation); *see supra* at 6 (discussing cases). In fact, they have pled neither.

Finally, Plaintiffs' claim also fails the second prong of Article III standing, which requires that Plaintiffs' claimed injury be "trace[able]" to BDI's alleged circumvention of YouTube's TPMs. *See Lujan*, 504 U.S. at 560 (alteration in original). As set forth below, Plaintiffs fail to sufficiently allege that *BDI* circumvented YouTube's TPMs, as opposed to using tools to access publicly available files. To the extent those publicly available files were accessed through an act of circumvention, those were someone else's acts.[4] Because Plaintiffs have not established the irreducible constitutional minimum for Article III standing, this Court should dismiss their Complaint.

## 2. Plaintiffs Lack Statutory Standing

Plaintiffs also lack statutory standing because the TPMs at issue belong to YouTube, not Plaintiffs. Section 1203(a) provides that "[a]ny person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation." 17 U.S.C. § 1203(a). The DMCA's anti-circumvention provisions are "directed at the circumvention of *copyright owners'* technological measures." *MDY Indus., LLC*, 629 F.3d at 942 (emphasis added). Section 1201(a)(3)(B) provides that a TPM "'effectively controls access to a work' if the measure, in the

---

[4] Plaintiffs' claim even runs partly afoul of the third prong. To establish redressability, a plaintiff must show that "it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) (quoting *Lujan*, 504 U.S. at 561). Plaintiffs' request for backward-looking injunctive relief would not redress any concrete injury—both because the purported harm sounds in copyright infringement and because "[o]nce AI ingests content, that content is stored in its neural network, and not capable of deletion or retraction." Compl. ¶ 9.

DEFENDANT BYTEDANCE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No: 5:25-CV-10933

ordinary course of its operation, requires the application of information, or a process or a treatment, *with the authority of the copyright owner*, to *gain access* to the work." 17 U.S.C. § 1201(a)(3)(B) (emphases added).

Although Plaintiffs allege that they are copyright owners of their videos, copyright ownership alone does not supply the connection Section 1203(a) requires. That is because the statute does not confer standing on a plaintiff who lacks any relationship to the protective measure allegedly circumvented. *VidAngel LLC v. ClearPlay, Inc.*, 703 F. Supp. 3d 1329, 1335-36 (D. Utah 2023) ("[T]hat Congress intended a statute to be enforced *does not mean that anyone seeking to enforce that statute falls within its zone of interests;*" Section 1201 "does not extend to those who merely allege competitive disadvantage flowing from the alleged violation of copyrights or circumvention of access control measures in which they have no legal interest.") (emphasis added). That flows directly from the statutory language:  to bring suit, Plaintiffs must be persons "injured by a violation" of Section 1201, 17 U.S.C. § 1203(a), and a "violation" of Section 1201(a)(1) requires circumvention of a technological measure that "effectively controls access" to their works by "requir[ing] the application of information, or a process or a treatment, with the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(B).  Plaintiffs do not allege that any technological measure *they* owned, deployed, or controlled was circumvented. They do not allege, for example, that they configured YouTube's API rate limits, set IP monitoring thresholds, drafted YouTube's Terms of Service, or played any role in deploying or modifying any aspect of YouTube's technical infrastructure.  Instead, every TPM alleged in the Complaint was designed, built, and administered by YouTube.  Compl. ¶ 34 ("YouTube deploys technological protection measures . . . designed to control access . . . ."); ¶ 35 ("YouTube's Terms of Service expressly prohibit scraping . . . ."); ¶ 43 ("YouTube occasionally updates APIs, . . . monitors downloading activity and may block IP addresses . . . ."). As courts recognize, statutory standing for a Section 1201(a) claim flows from control of the technological measure that protects the copyrighted work. *See Echostar*, 543 F. Supp. 2d at 1205–06; *VidAngel*, 703 F. Supp. 3d at 1335–36.

The Complaint asserts that creators "authoriz[e] and instruct[] YouTube to provide protection" for uploaded videos and that YouTube's protections influence creators' decisions to use the platform.

Compl. ¶ 6. That does not cure the defect. A user's decision to upload content to a platform that maintains its own access restrictions is not the same as deploying or controlling those restrictions. Nor does assent to a standard-form hosting arrangement transform the platform's unilateral technical architecture into a creator-owned, creator-authorized, or creator-controlled access-control system. *See Warth*, 422 U.S. at 499 ("[T]his Court has held that the plaintiff generally must assert his own legal rights and interests, and *cannot rest his claim to relief on the legal rights or interests of third parties*.") (emphasis added). They remain, at most, passive beneficiaries of YouTube's platform rules. Accepting Plaintiffs' theory would effectively confer Section 1203 standing on every creator who uploads content to a third-party platform with anti-scraping or anti-download protections, converting a platform's own operational choices into millions of individual private rights of action. Nothing in the statutory text supports that result. *See VidAngel*, 703 F. Supp. 3d at 1336.

### B.    Plaintiffs Fail To State A Claim Under Section 1201(a)(1)

Section 1201(a)(1)(A) provides that: "No person shall circumvent a technological measure that effectively controls *access* to a work protected under this title." 17 U.S.C. § 1201(a)(1)(A) (emphasis added). The foundational problem for Plaintiffs is that although they use the term "access controls," their own allegations make it clear that they are talking about *copy* controls instead. As they acknowledge, YouTube allows anyone to stream and view content freely, without password, payment, or encryption. What YouTube allegedly limits is the ability to *download copies* of videos. And while Section 1201 prohibits circumventing access controls, it does *not* prohibit circumventing copy controls. *See* 17 U.S.C. § 1201(a); 17 U.S.C. § 1201(b); U.S. Copyright Office, *The Digital Millennium Copyright Act of 1998: U.S. Copyright Off. Summary*, at 4 (Dec. 1998), https://www.copyright.gov/legislation/dmca.pdf ("1998 USCO DMCA Summary") at 4; *MDY Indus.*, 629 F.3d at 946 ("[W]e read the differences in structure between § 1201(a) and (b) as reflecting Congress's intent to address distinct concerns by creating different rights with different elements."); *Hattler v. Ashton,* No. LA CV16-04099 JAK (KSx), 2017 WL 11634742, at *6–8 (C.D. Cal. Apr. 20, 2017); *RealNetworks, Inc. v. Streambox, Inc.*, No. 2:99CV02070, 2000 WL 127311 at *1–2, 5 (W.D. Wash. Jan. 18, 2000) (holding that RealNetworks' "Copy Switch," which prevented users from

-10-

downloading streamed content after access had been granted, was a copy control under Section 1201(b), distinct from the "Secret Handshake" authentication protocol that controlled access under Section 1201(a)). That alone defeats Plaintiffs' claim.

Section 1201(a)(1)(A)'s other limits are also not met here: it does not apply to downstream copying or use of works that are already publicly accessible, it does not apply to acts of circumvention outside the United States, and it is subject to a three-year statute of limitations. Despite these limits, Plaintiffs have failed to allege facts establishing that BDI itself engaged in any act of unlawful circumvention, let alone one inside the United States and the statute of limitations.

### 1.    Congress Intentionally Differentiated Between Access Controls and Copy Controls

In enacting the DMCA, Congress sought to support copyright owners' use of certain mechanisms known as "technological protection measures," or "TPMs," while recognizing that individuals may have a legitimate need to bypass those measures for a wide range of lawful purposes. *See* 17 U.S.C. §§ 1201(a)(1)(B)–(D). Accordingly, "[a]s part of the balance Congress sought to strike in protecting the rights of copyright owners while preserving fair use," *United States v. Elcom Ltd.*, 203 F. Supp. 2d 1111, 1119 (N.D. Cal. 2002), the DMCA establishes two distinct regulatory regimes for TPMs—one designed to protect access to a copyrighted work, and the other a copyright owners' traditional rights, including the right to limit copying of the work in question.[5] S. Rep. No. 105-190, at 11-12 (1998); *see also Hattler*, 2017 WL 11634742, at *7; H.R. Rep. 105–551, pt. 1, at 18–19 (1998).

In so doing, as the U.S. Copyright Office explained shortly after the DMCA's enactment, "Section 1201 divides technological measures into two categories: measures that prevent unauthorized *access* to a copyrighted work ('access controls') and measures that prevent unauthorized *copying* of a copyrighted work ('copy controls')." 1998 USCO DMCA Summary at 3–4 (footnote omitted). This structural divide reflects Congress's deliberate decision to treat access restrictions and copying restrictions as distinct. *See MDY Indus.*, 629 F.3d at 946 ("[W]e read the differences in structure

---

[5] As defined in the DMCA, to "circumvent" generally refers to acts such as avoiding, bypassing, removing, deactivating, or impairing a TPM. *See* 17 U.S.C. § 1201(a)(3)(A), (b)(2)(A).

between § 1201(a) and (b) as reflecting Congress's intent to address distinct concerns by creating different rights with different elements.").

There is good reason for this difference. "The prohibition in 1201(a)(1) is necessary because prior to this Act, the conduct of circumvention was never before made unlawful." S. Rep. No. 105–190, at 12 (1998). By contrast, because "[t]he copyright law has long forbidden copyright infringements," Congress concluded that "no new prohibition was necessary" for circumventing copy controls. *Id*.; *see also* U.S. Copyright Office, *Section 1201 of Title 17: A Report of the Register of Copyrights,* at 8-10 (June 2017), available at https://www.copyright.gov/policy/1201/section-1201-full-report.pdf (last accessed March 31, 2026) ("USCO Section 1201 Report").

*Access controls*. On one side of the statutory divide, Section 1201(a) addresses measures that "effectively control access" to copyrighted works. 17 U.S.C. § 1201(a)(1), (2). The statute provides that "[n]o person shall circumvent" an access control, 17 U.S.C. § 1201(a)(1)(A), or "traffic in any technology, product, service, device, component, or part thereof, that is primarily designed or produced for the purpose of circumventing" an access control,  17 U.S.C. § 1201(a)(2)(A). "[A] technological measure 'effectively controls access to a work' if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to *gain access* to the work." 17 U.S.C. § 1201(a)(3)(B) (emphasis added). These measures, commonly referred to as "access controls," regulate whether a user can access a work, and include password protection, authentication codes, license keys, or encryption. *Synopsys, Inc. v. InnoGrit, Corp.*, No. 19-CV-02082-LHK, 2019 WL 4848387, at *7 (N.D. Cal. Oct. 1, 2019) (encrypted control code); *CDK Glob., LLC v. Tekion Corp.*, No. 25-cv-01394-JSC, 2025 WL 1939951, at *9 (N.D. Cal. July 15, 2025) (hardware and firewalls); USCO Section 1201 Report at 8-10.

In determining whether a technological measure is an access control, courts have refused to read the statutory language broadly. Instead, they have held, "where § 1201(a)(1) refers to technological measure[s] that control 'access' to a protected work, that section should be read narrowly to exclude technologies that permit access to copyrighted work, but restrict copying." *Hattler,* 2017 WL 11634742, at *8. Circumvention of an "access control" involves the defeat of a genuine

technological gate that prevents a user from viewing or opening the work at all—like bypassing encryption, defeating password authentication, cracking license-key systems, or circumventing hardware or software controls that must be satisfied before the work can be accessed. *See, e.g.*, *Disney Enters., Inc. v. VidAngel, Inc.,* 869 F.3d 848, 852, 864–65 (9th Cir. 2017) (allegations related to circumvention of encryption-based TPMs governing access to motion pictures to "rip" digital copies); *Nintendo of Am., Inc. v. Chan*, No. CV 09-4203, 2009 WL 2190186 at *4 (C.D. Cal. July 21, 2009) (allegations related to circumvention of gaming console security system required to access copyrighted game code).    In those cases, the technological measure operated as a digital lock: absent circumvention, the user could not *access* the copyrighted work.  And, as relevant here, courts have found that TPMs that control the ability to *view or watch* video content are access controls. *Disney Enters.*, 869 F.3d at 864–65; *Nintendo*, 2009 WL 2190186 at *4.[6]

*Copy controls*.  On the other side of the divide, Section 1201(b) addresses technological measures that "effectively protect[] a right of a copyright owner"—i.e., measures that restrict the exercise of exclusive rights such as reproduction or copying *after* a user has gained access.[7]  17 U.S.C. § 1201(b)(1)(A).    These measures, commonly referred to as "copy controls," protect against unauthorized uses of a copyrighted work once access has been lawfully obtained, and include measures to prevent digital copying.  They do "nothing to prevent access to the plain text of the work."  S. Rep. No. 105-190, at 12 (1998).  Copy controls include "technological measures that allow some forms of 'access' but restrict other uses of the copyrighted work," such as "streaming media, which permits users to view or watch a copyrighted work but prevents them from downloading a permanent copy of the work." *Hattler*, 2017 WL 11634742, at *6 (quoting *Lexmark Int'l, Inc. v. Static Control*

---

[6] Congress also recognized that the new anti-circumvention right required limits.    Section 1201(a)(1)(B)–(D) authorizes the Library of Congress to exempt certain classes of works from the prohibition on circumvention where the public's right to access outweighs the owner's interest in restricting access.  *See* 17 U.S.C. § 1201(a)(1)(B)–(D).  This exemption mechanism underscores that Congress carefully calibrated Section 1201(a) to protect genuine access controls—not to create a sweeping prohibition on all forms of copying or downloading.

[7] Those exclusive rights are reproduction, distribution, public performance, public display, and creation of derivative works.  17 U.S.C. § 106.  Historically speaking, preventing "access" to a protected work in and of itself has *not* been a right arising from the Copyright Act.  *MDY Indus.*, 629 F.3d at 944.

-13-

*Components, Inc.*, 387 F.3d 522, 545 (6th Cir. 2004)).

Section 1201 does *not* prohibit circumvention of copy controls.

| 17 U.S.C. § 1201 | Circumvention Prohibition? | Trafficking Prohibition? |
|---|---|---|
| Access Controls | Yes<br><br>§ 1201(a)(1) | Yes<br><br>§ 1201(a)(2) |
| Copy Controls | No | Yes<br><br>§ 1201(b) |

> **2.    Plaintiffs Have Not Alleged an Access Control Within the Meaning of Section 1201(a)(1)**

> **a.  Plaintiffs Allege Copy Controls, Not Access Controls**

Plaintiffs' theory would erase the foregoing statutory division. Notwithstanding that the DMCA treats access and copy controls differently and imposes distinct prohibitions for each, what Plaintiffs actually describe are restrictions on *downloading*, not barriers to *accessing* the videos in the first instance. Plaintiffs' theory thus depends on treating alleged downloading restrictions—classic "copy controls"—as "access controls." But Plaintiffs have no viable claim under Section 1201(a)(1)(A) unless the challenged measure restricts access to the videos themselves. *MDY Indus.*, 629 F.3d at 944; *see also* 1998 USCO DMCA Summary at 4 ("Since copying of a work may be a fair use under appropriate circumstances, section 1201 does not prohibit the act of circumventing a technological measure that prevents copying."). And as courts have long held, an access control TPM is the "electronic equivalent of breaking into a locked room," not a mechanism that merely discourages or complicates copying after the work is already available for viewing. *Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 316–18 (S.D.N.Y. 2000) (quoting H.R. Rep. 105-551, pt. 1, at 17 (1998)); *see also Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 443 (2d Cir. 2001) (analogizing access controls to locks and "digital walls").

Plaintiffs' failure to identify *any* technological protection measure that falls within the scope of Section 1201(a) is dispositive. *See LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 511

(S.D.N.Y. 2015) (quoting 17 U.S.C. § 1201(a)(3)(B) (requiring "information upon which to determine whether the measure 'effectively controls access to a work' within the meaning of the DMCA"); *FMHUB, LLC v. MuniPlatform, LLC*, No. 19-15595 (FLW), 2021 WL 1422873, at *6 (D.N.J. Apr. 15, 2021) (dismissing DMCA claim where plaintiff failed to allege that the passwords protected the same copyrighted works that the defendant allegedly accessed).

Further, Plaintiffs' allegations foreclose their ability to cure this through amendment. They concede that YouTube videos are publicly viewable:  users "can watch and listen . . . for free." Compl. ¶ 33.  They do not allege any paywall, password, key, authentication gate, encryption barrier, or other "process or treatment" authorized by Plaintiffs that must be overcome to access the videos themselves. Indeed, Plaintiffs do not allege *any* barrier at all to viewing their videos, which they allege have been accessed over 4 billion times.  Compl. ¶¶ 11–13; *see also Hattler*, 2017 WL 11634742, at *8 (dismissing Section 1201(a)(1) circumvention claim where videos were accessible for public viewing).

Instead,  Plaintiffs allege that YouTube does not "allow *downloading* of the digital files" and does not provide a readily available download option, acknowledging that streaming and downloading offer "different value propositions."  Compl. ¶¶ 33, 38–40 (emphasis added).  But a restriction on downloading is not a barrier to anyone *accessing* the videos in the first instance.  What Plaintiffs are actually describing is a limitation YouTube places on obtaining a permanent *local copy*—in other words, a copy control, not a technological gate that controls *access* to the work.  Labeling these controls "access controls" in the Complaint is an incorrect legal conclusion that Plaintiffs' own allegations contradict.

Plaintiffs' dataset allegations further confirm this.  Plaintiffs concede that the HD-VILA-100M dataset does not contain Plaintiffs' video files; rather, it contains only URLs, identifiers, and timestamps pointing to content hosted on YouTube.  Compl. ¶¶ 56–57, 62, 70.  Plaintiffs' DMCA liability theory therefore (admittedly) depends entirely on the inference that BDI separately downloaded those videos using automated tools.  Compl. ¶¶ 75–80.  But that is a theory about copying and downstream use—not circumventing a technological gate that controlled access at the threshold.

That is exactly how courts have applied Section 1201(a)(1).  In *Hattler v. Ashton*, the plaintiff

alleged that defendants downloaded audiovisual works from publicly accessible streaming sites by "circumvent[ing] the controls intended to limit access." 2017 WL 11634742, at *3. Defendants did not dispute that "in order to download the Works for their use during a concert, they were required to circumvent technology expressly designed to prevent that form of access." *Id.* at *6. Notwithstanding defendants' concession on that point, the court dismissed the Section 1201(a)(1) claim, holding: "where § 1201(a)(1) refers to technological measure[s] that control 'access' to a protected work, that section should be interpreted narrowly to exclude technologies that permit access to copyrighted work, but restrict copying." *Id.* at *8. The court emphasized that "because it is uncontested that the Works are accessible to the public on many websites, any effort to amend the SAC would be futile." *Id.*

So too here. Plaintiffs concede the videos are publicly accessible for viewing. *Compare* Compl. ¶ 33 ("YouTube's 'users' . . . can watch and listen to music videos for free on YouTube's ad-supported service . . . ."), *with Hattler*, 2017 WL 11634742, at *6 (works at issue "were publicly available for streaming"). And they claim that the allegedly circumvented TPMs controlled downloading of the works—not access to them. *Compare* Compl. ¶ 4, (alleging "Defendant used a video-downloading program combined with virtual machines that rotated IP addresses to avoid detection and blocking"), *and* Compl. ¶ 43 (alleging "[i]n order to further enforce its prohibitions on downloading content, YouTube uses technological processes and tools to detect and block unauthorized downloading"), *with Hattler*, 2017 WL 11634742, at *5 (alleging defendants "downloaded the Works in a manner that circumvented the technological protections on the websites where the Works were available for streaming"). This Court should reach the same conclusion as the court in *Hattler* and dismiss Plaintiffs' Section 1201(a)(1) claim.

Plaintiffs' effort to re-label "downloading" as "unauthorized access to data files" (Compl. ¶ 39) cannot expand Section 1201(a) beyond its text. *See MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.,* 622 F.3d 361, 366 (5th Cir. 2010) ("Because § 1201(a)(1) is targeted at circumvention, *it does not apply to the use of copyrighted works after the technological measure has been circumvented.*") (emphasis added). At bottom, Plaintiffs are trying to use Section 1201(a)(1) as a substitute for claims that sound in copying or downstream use—claims that, if they exist at all, are governed by the

Copyright Act's infringement framework (and its prerequisites), not by stretching "access" to mean "download."

### b.  The Specific TPMs Plaintiffs Identify Do Not Control Access

Plaintiffs specifically identify the following as YouTube TPMs purportedly controlling access to videos: "API usage limits," API updates, IP monitoring/blocks, and YouTube's Terms of Service prohibiting scraping/downloading.  Compl. ¶¶ 34–35, 43–44, 115, 118.  None of these plausibly constitute technological measures that "effectively control[] access" to Plaintiffs' publicly accessible videos, 17 U.S.C. § 1201(a)(1)(A).

For starters, "API updates" and "IP monitoring" are paradigmatic usage-monitoring measures designed to monitor usage, not technological measures that control access to content.  As such, they do not plausibly plead an access control "digital wall." Plaintiffs allege only that YouTube "occasionally updates APIs" (which "interfere with downloaders utilizing the non-updated API"), and that YouTube "monitors downloading activity and may block IP addresses that make too many download attempts in a specified time period."  Compl. ¶ 43.  Those generalized assertions do not identify any access gate that, "in the ordinary course of its operation," requires an authorized process to gain access to the work. 17 U.S.C. § 1201(a)(3)(B).  If anything, Plaintiffs' allegations confirm the opposite:  that these measures address automated, high-volume activity *after* a viewer has already accessed publicly available content—not initial access to the videos themselves.

Plaintiffs' "API updates" and "IP monitoring" theory is exactly the sort of "safeguards" theory courts have correctly rejected.  *CouponCabin LLC v. Savings.com, Inc*., No. 2:14-CV-39-TLS, 2016 WL 3181826, at *1, *6 (N.D. Ind. June 8, 2016) (plaintiff did not plead an effective access control within the meaning of the DMCA's anti-circumvention provision where plaintiff alleged it implemented technological "safeguards," including IP monitoring blocks because the site remained publicly accessible and no technological gate, such as a password restricted access); s*ee also Lexmark Int'l*, 387 F.3d at 547 (a "lock on the back door" does not "control[] access" where the "front door" is open), *abrogated on other grounds by eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388 (2006), *as recognized by RJ Control Consultants, Inc. v. Multiject, LLC,* 100 F.4th 659, 667 (6th Cir. 2024).  And

it runs directly afoul of *Hattler*'s core point: Section 1201(a)(1) is not triggered merely because a defendant allegedly circumvented friction or enforcement measures associated with downloading where the work itself remains openly accessible for viewing.

Finally, YouTube's Terms of Service (Compl. ¶ 118) are not even a technological measure to begin with, let alone one that effectively controls access. Section 1201 says nothing about contractual, as opposed to "technological measure[s]" that require the "application of information, or a process or treatment" to gain access.[8] 17 U.S.C. § 1201(a)(3)(B). Accordingly, courts have routinely distinguished between a true technological gate on the one hand and "contractual restriction[s]" on use on the other and confirmed that while breaching the former is circumvention, breaching the latter is not. *Dish Network L.L.C. v. World Cable Inc.* 893 F. Supp. 2d 452, (E.D.N.Y. 2012) (dismissing Section 1201(a) theory where allegations suggested a contractual violation rather than avoidance of a "digital wall"); *Maxim Integrated Prods., Inc.*, No. 12-244, 2013 WL 12141373, at *19 (W.D. Pa. Mar. 19, 2013) (requiring allegations of a "technological measure to prevent access from occurring in the first place"). Here, again, Plaintiffs offer a dispute about copying, use, contract, or other non-DMCA theories that Section 1201(a)(1) does not convert into an anti-circumvention claim.

### 3. The Complaint Fails to Allege that BDI Itself Circumvented Any Technological Measure, Especially In The United States, Inside the Statute of Limitations.

Plaintiffs' anti-circumvention claim suffers from three other fundamental problems.

First, Section 1201(a)(1) targets the act of circumvention itself—the moment a person "descramble[s]," "decrypt[s]," or otherwise "avoid[s], bypass[es], remove[s], deactivate[s], or impair[s] a technological measure." 17 U.S.C. § 1201(a)(3)(A). "[I]t does not apply to the use of

---

[8] Neither *Yout LLC v. Recording Industry Association of America, Inc.*, 633 F. Supp. 3d 650 (D. Conn. 2022), *appeal pending*, No. 22-760 (2d Cir.), nor *Cordova v. Huneault*, No. 25-cv-04685-VKD, 2026 WL 184598 (N.D. Cal. Jan. 23, 2026), supports Plaintiffs' claim here. In both cases, the defendants focused primarily on the efficacy of the alleged access control, not the access control versus copy control distinction that is dispositive here. Moreover, *Cordova* involved detailed allegations of a specific technological mechanism—"rolling-cipher technology" that "encrypts and dynamically alters the video stream's URL signatures"—and allegations that defendants "retrieve and decrypt the obfuscated streaming URLs." 2026 WL 184598, at *8–9. Plaintiffs here plead no such facts.

copyrighted works *after* the technological measure has been circumvented." *MGE UPS Sys*, 622 F.3d at 366. But the Complaint does not plausibly allege that BDI committed any such act. Instead, Plaintiffs allege that Microsoft Research Asia compiled the HD-VILA-100M dataset and published it on GitHub, and that BDI then obtained that dataset and used it (along with open-source tools like yt-dlp) to retrieve videos from YouTube. Compl. ¶¶ 58–60, 65, 75-80. Those allegations describe downstream retrieval and use of content that Plaintiffs admit was publicly viewable for free, and were in fact freely viewed over 4 billion times, not circumvention by BDI of any technological measure. Compl. ¶¶ 11–13, 33. Section 1201 draws a line between access controls and later use of content, and the Complaint does not plausibly allege that BDI crossed it.

Second, Plaintiffs' claim independently fails because Section 1201 does not apply extraterritorially, and there is no plausible allegation that BDI violated it in the United States. Courts presume federal statutes reach only domestic conduct absent clear congressional intent otherwise, *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010), and consistent with that presumption, the Ninth Circuit has confirmed that "wholly extraterritorial conduct does not give rise to a DMCA circumvention claim," *Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, No. 23-55001, 2024 WL 3616945, at *1 (9th Cir. Aug. 1, 2024). Plaintiffs must therefore plausibly allege that a qualifying act of circumvention occurred in the United States. They have not.

That failure is not a technicality. *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No. 17-cv-00561-WHO (LB), 2018 WL 577941 (N.D. Cal. Jan. 29, 2018), drew the relevant line precisely: a U.S.-based engineer who personally inputs counterfeit keys commits domestic circumvention; but where a foreign actor removes the protection entirely and downstream U.S. users merely access already-circumvented material, "no DMCA liability would attach because . . . the act of circumvention took place *entirely outside the United States*." *Id.* at *6 (emphasis added). Here, the Complaint alleges nothing suggesting that any U.S. domiciled employee of BDI bypassed any TPM as opposed to downstream use of data. Post-circumvention use of content is not circumvention. *MGE UPS Sys., Inc.*, 622 F.3d at 366.

Third, Plaintiffs' own allegations suggest that the statute of limitations has run for any act of circumvention and they have not explained any facts that would warrant tolling that statute. A claim

-19-

DEFENDANT BYTEDANCE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No: 5:25-CV-10933

may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations if "the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)).  Claims brought under Title 17 of the United States Code are subject to a three-year statute of limitations.  *See* 17 U.S.C. § 507(b); *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1022, 1025 (9th Cir. 2019).  But here, Plaintiffs (1) allege that the HD-VILA-100M dataset was first published in 2021 (Compl. ¶ 65)—*four* years before the Complaint here was filed; (2) do not allege that circumvention occurred within the statute of limitations; and (3) allege no facts to support tolling the statute, to the extent tolling could apply..

At bottom, the Complaint alleges on "information and belief" that unspecified tools and processes were used to download videos at scale, by unidentified actors, in unidentified locations, accessing unidentified servers, at some unspecified date.  Compl. ¶¶ 75–80.  That is not a plausible, cognizable allegation of domestic circumvention attributable to BDI.  Because the Complaint fails to allege facts showing that a qualifying act of circumvention occurred within the United States and was committed by BDI within the limitations period, Plaintiffs fail to state a claim under Section 1201(a).

## V.    CONCLUSION

Plaintiffs' fundamental complaint is that BDI allegedly used their YouTube videos to train an AI model.  Regardless of whether that is true, Section 1201(a) does not provide a cause of action to address it absent, *inter alia*, plausible allegations of concrete injury and the circumvention of access rather than copy controls.  The Court should dismiss Plaintiffs' Complaint and reject their novel and unsupported DMCA liability theory.

Dated: March 31, 2026        Respectfully submitted,

PILLSBURY WINTHROP SHAW PITTMAN LLP

*/s/ Anne M. Voigts*
ANNE M. VOIGTS (220783)
LAURA C. HURTADO (267044)
KAYVAN M. GHAFFARI (299152)

Attorneys for Defendant,
BYTEDANCE INC.

-21-

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Anne M. Voigts*
ANNE M. VOIGTS (220783)

Attorneys for Defendant,
BYTEDANCE INC.

-22-
DEFENDANT BYTEDANCE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No: 5:25-CV-10933