PILLSBURY WINTHROP SHAW PITTMAN LLP
ANNE M. VOIGTS (220783)
anne.voigts@pillsburylaw.com
2400 Hanover Street
Palo Alto, California 94304-1113
Telephone:     650.233.4500
Facsimile:     650.233.4545

LAURA C. HURTADO (267044)
laura.hurtado@pillsburylaw.com
KAYVAN M. GHAFFARI (299152)
kayvan.ghaffari@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone: 415.983.1000
Facsimile: 415.983.1200

Attorneys for Defendant
BYTEDANCE INC.

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| TED ENTERTAINMENT, INC., MATT FISHER, and GOLFHOLICS, INC., each individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BYTEDANCE INC.,<br><br>Defendant. | Case No. 3:25-CV-10933-JSC<br><br>**DEFENDANT BYTEDANCE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: Sept. 24, 2026<br>Hearing Time: 10:00 a.m.<br>Judge: Jacqueline Scott Corley<br>FAC Filed: Apr. 13, 2026 |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 24, 2026 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8 of the United States District Court located at 450 Golden Gate Avenue, San Francisco, CA 94102 before the Honorable Jacqueline Scott Corley, Defendant Bytedance Inc. ("BDI"), by and through its counsel of record, hereby moves this Court to dismiss with prejudice the First Amended Complaint (ECF No. 27) ("FAC") filed by Plaintiffs Ted Entertainment, Inc., Matt Fisher and Golfholics, Inc. ("Plaintiffs").

BDI brings this motion under (1) Federal Rule of Civil Procedure 12(b)(1) and (b)(6) because Plaintiffs lack both Article III and statutory standing to pursue their only cause of action, asserting a violation of 17 U.S.C. § 1201(a), the anti-circumvention provision of the Digital Millennium Copyright Act ("DMCA"); and (2) Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs still fail to state a claim upon which relief can be granted.

This motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, all pleadings and papers on file in this action, and such other matters as may be presented to the Court at the hearing.

Dated: July 6, 2026                           PILLSBURY WINTHROP SHAW PITTMAN LLP


                                              By: /s/ Anne M. Voigts
                                                  ANNE M. VOIGTS (220783)
                                                  LAURA C. HURTADO (267044)
                                                  KAYVAN M. GHAFFARI (299152)

                                                  Attorneys for Defendant,
                                                  BYTEDANCE INC.

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

    A.  Statutory Background.................................................................................................. 2

    B.  Factual Background ................................................................................................... 3

LEGAL STANDARD .......................................................................................................... 5

ARGUMENT ....................................................................................................................... 5

I.    PLAINTIFFS LACK ARTICLE III STANDING ......................................................... 5

II.   PLAINTIFFS LACK STATUTORY STANDING .......................................................... 6

III. PLAINTIFFS FAIL TO ALLEGE CIRCUMVENTION OF ACCESS CONTROLS UNDER SECTION 1201(A) ................................................................................................. 8

    A.  Section 1201(a) Applies Only to Technological Measures That Effectively Control Access to Protected Works ............................................................................................. 8

    B.  Plaintiffs Allege Nonactionable Copy Controls, Not Access Controls ........................... 10

    C.  None of the Specific TPMs Alleged Control Access.......................................................... 13

    D.  Plaintiffs Have Not Alleged TPMs that Users Must Ordinarily Overcome ..................... 16

    E.  Several Non-binding Cases Reaching a Contrary Result Misinterpret Section 1201(a) ... 18

CONCLUSION ..................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Avaya, Inc. v. Telecom Labs, Inc.*,
2012 WL 13035096 (D.N.J. May 1, 2012) ........................................................................... 25

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988) .............................................................................................. 12

*Barnum Timber Co. v. U.S. Env'tl. Prot. Agency*,
633 F.3d 894 (9th Cir. 2011) .............................................................................................. 12

*Callahan v. Ancestry.com Inc.*,
2021 WL 2433893 (N.D. Cal. June 15, 2021) ................................................................... 13

*CDK Glob., LLC v. Tekion Corp.*,
2025 WL 1939951 (N.D. Cal. July 15, 2025) ............................................................... 16, 17

*Columbia Pictures Indus., Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013) ........................................................................................ 20, 29

*Cordova v. Huneault*,
817 F. Supp. 3d 819 (N.D. Cal. 2026) ............................................................................ 26, 27

*CouponCabin LLC v. Savings.com, Inc.*,
2016 WL 3181826 (N.D. Ind. June 8, 2016) ...................................................................... 22

*Digital Drilling Data Sys., LLC v. Petrolink Servs., Inc.*,
965 F3d 365 (5th Cir. 2020) ............................................................................................... 25

*Dish Network L.L.C. v. World Cable Inc.*,
893 F. Supp. 2d 452 (E.D.N.Y. 2012) ............................................................................... 24

*Disney Enters., Inc. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) ......................................................................................... 16, 23

*Doe 1 v. GitHub, Inc.*,
672 F. Supp. 3d 837 (N.D. Cal. 2023) ............................................................................... 13

*Echostar Satellite L.L.C. v. Viewtech, Inc.*,
543 F. Supp. 2d 1201 (S.D. Cal. 2008) ............................................................................. 14

*United States v. Elcom Ltd.*,
203 F. Supp. 2d 1111 (N.D. Cal. 2002) ......................................................................... 10, 16

*FMHUB, LLC v. MuniPlatform, LLC*,
2021 WL 1422873 (D.N.J. Apr. 15, 2021) ........................................................................ 24

DEFENDANT BDI'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FAC;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT, CASE NO. 3:25-CV-10933-JSC

iii

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008)............................................................................................ 12

*Hattler v. Ashton*,
  2017 WL 11634742 (C.D. Cal. Apr. 20, 2017) .............................................................. *passim*

*Justice v. Uncharted Labs, Inc.*,
  2026 WL 1430232 (S.D.N.Y. May 21, 2026)................................................................ 26, 27

*Lasica v. Am. Online, Inc.*,
  2015 WL 12791494 (C.D. Cal. Oct. 8, 2015) ...................................................................... 19

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  387 F.3d 522 (6th Cir. 2004)..................................................................................... 23, 26, 27

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
  83 F. Supp. 3d 501 (S.D.N.Y. 2015).................................................................................... 24

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992).................................................................................................... 12, 13

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011)............................................................................................. 12

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
  629 F.3d 928 (9th Cir. 2010)............................................................................................ *passim*

*MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*,
  622 F.3d 361 (5th Cir. 2010)................................................................................... 13, 20, 28

*Nintendo of Am., Inc. v. Chan*,
  No. CV 09-4203, 2009 WL 2190186 (C.D. Cal. July 21, 2009) ........................................... 17

*In re OpenAI, Inc. Copyright Infringement Litig.*,
  2025 WL 3635559 (S.D.N.Y. Dec. 15, 2025) ...................................................................... 24

*Papasan v. Allain*,
  478 U.S. 265 (1986) .......................................................................................................... 12

*Raw Story Media, Inc. v. OpenAI, Inc.*,
  756 F. Supp. 3d 1 (S.D.N.Y. 2024)..................................................................................... 13

*RJ Control Consultants, Inc. v. Multiject, LLC*,
  100 F.4th 659 (6th Cir. 2024)............................................................................................. 23

*Sony Music Ent. v. Uncharted Labs, Inc.*,
  No. 24-cv-7367, 2026 WL 1019199 (S.D.N.Y. Apr. 15, 2026) ..................................... 26, 27

*Synopsys, Inc. v. InnoGrit, Corp.*,
  2019 WL 4848387 (N.D. Cal. Oct. 1, 2019)................................................................... 16, 17

*Ted Entertainment, et al., v. Amazon*,
    No. 26-cv-1134 (W.D. Wash.) ........................................................................................ 8

*Ted Entertainment, et al., v. Apple*,
    No. 26-cv-2936 (N.D. Cal) ............................................................................................. 8

*Ted Entertainment, et al., v. OpenAI*,
    No. 26-cv-2935 (N.D. Cal.) ............................................................................................ 8

*Ted Entertainment, et al., v. Runway AI*,
    No. 26-1362 (S.D.N.Y.) .................................................................................................. 8

*Ted Entertainment, Inc., et al., v. Meta Platforms, Inc.*,
    No. 25-cv-10931 (N.D. Cal.) .......................................................................................... 8

*Ted Entertainment, Inc., et al., v. Nvidia Corporation*,
    N No. 25-cv-10287 (N.D. Cal.)....................................................................................... 8

*Ted Entertainment, Inc., et al., v. Snap Inc.*,
    No. 26-cv-00754 (C.D. Cal.)........................................................................................... 8

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ..................................................................................................... 13

*Universal City Studios, Inc. v. Corley*,
    273 F.3d 429 (2d Cir. 2001)..................................................................................... 13, 17

*Universal City Studios, Inc. v. Reimerdes*,
    111 F. Supp. 2d 294 (S.D.N.Y. 2000)........................................................................... 17

*VidAngel LLC v. ClearPlay, Inc.*,
    703 F. Supp. 3d 1329 (D. Utah 2023) ...................................................................... 14, 23

*Warth v. Seldin*,
    422 U.S. 490 (1975) ..................................................................................................... 14

*Y.H. v. Blizzard Ent., Inc.*,
    2024 WL 5431490 (C.D. Cal. Aug. 14, 2024) .............................................................. 13

*Yout, LLC v. RIAA*,
    633 F. Supp. 3d 650 (D. Conn. 2022) ...................................................................... 26, 27

**<u>Statutes and Codes</u>**

United States Code
    Title 17 Section 106 ...................................................................................... 17, 20, 29
    Title 17 Section 1201 ............................................................................................ *passim*
    Title 17 Section 1201(a) ....................................................................................... *passim*
    Title 17 Section 1201(b) ....................................................................................... *passim*
    Title 17 Section 1203 ...................................................................................... 14, 15, 28

**<u>Rules</u>**

Federal Rule of Civil Procedure
    12(b)(1) ......................................................................................................................... 8, 12
    12(b)(6) ......................................................................................................................... 8, 12

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether this Court should dismiss the First Amended Complaint for lack of Article III and statutory standing under Federal Rules of Civil Procedure 12(b)(1) and (b)(6).

2.      Whether this Court should dismiss Plaintiffs' sole cause of action alleging a violation of the DMCA's anti-circumvention provision, 17 U.S.C. § 1201(a), for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

After ByteDance Inc. ("BDI") moved to dismiss Plaintiffs' original complaint, Plaintiffs filed an amended complaint that suffers from the same flaws as their first.  As BDI explained in that motion (which the Court did not rule on because Plaintiffs filed the FAC), Plaintiffs Ted Entertainment, Inc., Matt Fisher, and Golfholics, Inc. have filed a series of similar complaints against developers of artificial-intelligence video-generation models.[1]  They allege that defendants trained their models on Plaintiffs' publicly accessible YouTube videos.  And they contend that this violated Section 1201(a) because defendants (including BDI here) allegedly bypassed YouTube's platform controls to download videos that were otherwise freely viewable through YouTube. Because any copyright claim would face steep hurdles—including the absence of copyright registrations and a fair-use defense, Plaintiffs instead invoke the DMCA's anti-circumvention provision, 17 U.S.C. § 1201(a).  But that theory cannot be squared with the DMCA's language, purpose, or Plaintiffs' own admission that their videos are free for anyone to watch on YouTube, without a password, paywall, or any other barrier to viewing.

This Court should dismiss Plaintiffs' FAC for three independent reasons.

First, Plaintiffs lack Article III standing.  Because the DMCA's anti-circumvention right is distinct from copyright infringement, Plaintiffs must plead an injury that is fairly traceable to the

---

[1] *E.g., Ted Entertainment, Inc., et al., v. Nvidia Corporation*, N No. 25-cv-10287 (N.D. Cal.); *Ted Entertainment, Inc., et al.,  v. Meta Platforms, Inc.*, No. 25-cv-10931 (N.D. Cal.); *Ted Entertainment, Inc., et al., v. Snap Inc.*,  No. 26-cv-00754 (C.D. Cal.); *Ted Entertainment, et al., v. OpenAI*, No. 26-cv-2935 (N.D. Cal.); *Ted Entertainment, et al., v. Apple,* No. 26-cv-2936 (N.D. Cal); *Ted Entertainment, et al., v. Amazon,* No. 26-cv-1134 (W.D. Wash.); *Ted Entertainment, et al., v. Runway AI*, No. 26-1362 (S.D.N.Y.).

DEFENDANT BDI'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FAC; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT, CASE NO. 3:25-CV-10933-JSC

1

110439930

circumvention of an access control, not the copying, retention, or downstream use of their videos. But every injury the FAC identifies flows from BDI's alleged use of publicly viewable YouTube content, not any act of circumvention. Those are alleged copyright injuries, and they cannot support a claim under Section 1201(a). FAC ¶¶ 118-128.

Second, Plaintiffs lack statutory standing because they do not own, operate, deploy, or control any of the alleged technological protection measures ("TPMs") they seek to enforce. Those measures—the "rolling cipher," IP-blocking infrastructure, session-bound URLs, CAPTCHA systems, and proof-of-origin tokens—are designed, implemented, and maintained exclusively by YouTube, not Plaintiffs. FAC ¶¶ 45, 50-64. Section 1201's private right of action runs to the owner of the circumvented measure, not every creator who posts content on a platform that deploys its own controls.

Third, Plaintiffs fail to allege the circumvention of any access control. Section 1201(a) only reaches measures that control access to a work, not those that regulate copying, downloading, or retention after access has been granted. 17 U.S.C. § 1201(a)(1)(A). Plaintiffs concede that their videos are free to watch on YouTube. By posting those videos on YouTube, Plaintiffs grant all YouTube users a worldwide license to access their works. The measures Plaintiffs identify, which govern only downloading and automated retrieval of copies, do not "in the ordinary course of [their] operation," require the application of information or a process to gain access to a work, as the DMCA requires. While district courts have divided over whether YouTube-style measures such as these are access controls or copy controls, the better-reasoned decisions—consistent with the text and structure of the DMCA and this Court's own analysis in *CDK Global*—hold that such measures regulate copying and therefore are outside the scope of Section 1201(a).

In sum, the FAC asserts injuries sounding in copyright rather than anti-circumvention, relies on TPMs belonging to a third party, and incorrectly treats anti-downloading measures as access controls, for content that is freely accessible to anyone. This Court should dismiss it with prejudice.

## BACKGROUND

**A.    Statutory Background**

In enacting the DMCA, Congress sought to support copyright owners' use of TPMs while

recognizing that individuals may have legitimate reasons to bypass those measures for a wide range of lawful purposes. *See* 17 U.S.C. §§ 1201(a)(1)(B)–(D). As part of that balancing, Section 1201 of the DMCA distinguishes between measures that prevent unauthorized access to a work and measures that prevent unauthorized copying. 1998 USCO DMCA Summary at 3–4; S. Rep. No. 105-190, at 11-12 (1998); H.R. Rep. 105–551, pt. 1, at 18–19 (1998). *see also United States v. Elcom Ltd.*, 203 F. Supp. 2d 1111, 1119 (N.D. Cal. 2002). Thus, Section 1201(a), on which Plaintiffs rely here, prohibits circumvention of measures that "effectively control access" to a protected work. 17 U.S.C. § 1201(a)(1)(A). It applies only when, in the ordinary course, a measure requires an authorized process, treatment, or information to gain access to the work. *Id.* § 1201(a)(3)(B). By contrast, Section 1201(b) addresses measures that protect a copyright owner's rights after access has been obtained and does not prohibit circumvention itself. *Id.* § 1201(b)(1). As the Ninth Circuit has explained, that structural divide reflects Congress's intent to create "different rights with different elements." *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 946 (9th Cir. 2010); *see also Hattler v. Ashton*, 2017 WL 11634742, at *6–8 (C.D. Cal. Apr. 20, 2017).

### B.    Factual Background

Plaintiffs are YouTube content creators who allege their videos appeared in publicly referenced AI datasets including HD-VILA-100M, Panda-70M, and HowTo100M. FAC ¶¶ 18-24, 85. Defendant BDI is a Delaware corporation headquartered in San Jose, California. *Id.* at ¶ 25.

Plaintiffs do not claim copyright infringement based on any alleged AI training itself—nor could they due, among other issues, to an admitted lack of copyright registrations and the fair use doctrine. Instead, Plaintiffs allege that BDI unlawfully downloaded YouTube videos, purportedly to train AI video-generation models.. *Id.* ¶¶ 1-3, 76-77. Plaintiffs suggest that BDI must have downloaded the videos from YouTube because the datasets themselves do not contain copies of YouTube videos.[2] According to Plaintiffs, the datasets enable users to locate specific videos on YouTube for retrieval. Thus, Plaintiffs allege, "any user of the dataset"—including BDI—"must

---

[2] Plaintiffs allege that the datasets contain only information identifying where the videos can be found on YouTube, such as URLs and timestamps.

DEFENDANT BDI'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FAC; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT, CASE NO. 3:25-CV-10933-JSC

3

retrieve the referenced content from YouTube itself." *Id*. ¶¶ 86, 88, 91, 95.

As to the allegedly illicit downloading, Plaintiffs concede that the YouTube videos are publicly viewable, free of charge, without a password, paywall, license key, decryption, or any other barrier to viewing.[3] *Id.* ¶ 33. Nevertheless, Plaintiffs identify five categories of alleged TPMs that YouTube purportedly deploys and were allegedly circumvented here: (1) rolling ciphers; (2) IP blocking and rate limiting; (3) session-bound URLs; (4) CAPTCHA challenges; and (5) proof-of-origin tokens. FAC ¶¶ 45, 50-64. Plaintiffs concede that these mechanisms, to the extent they qualify as TPMs at all, restrict downloading rather than YouTube users' ability to access and view their videos in the first instance. Plaintiffs also concede that these TPMs do not apply in every instance where a user tries to access content; instead, they have specific triggers. *Id.* ¶¶ 107, 113-14. Plaintiffs further acknowledge that these measures are designed, implemented, maintained, modified, and controlled exclusively by YouTube's "proprietary" logic. *Id.* ¶¶ 37, 50, 52, 102, 116, 157. YouTube's Terms of Service reserve to YouTube the right to "add[] or remov[e] features and functionalities," "alter or discontinue the Service," and make changes to "prevent illegal activities on or abuse of [YouTube's] systems."[4]

Plaintiffs do not allege when these TPM applied, which TPMs applied to Plaintiffs' videos or what tool(s), if any, BDI in particular purportedly used to download the videos. Instead, Plaintiffs, who have filed a slew of similar suits against other companies: (1) plead largely "upon information and belief" that BDI used "one or more" tools, "for example" a "descrambling tool *such as* yt-dlp"[5] or "a substantially similar" technology; (2) describe how YouTube content could be retrieved at scale; and (3) ask the Court to infer that BDI must have done so. FAC ¶¶ 101-115. They promise, however, that "[t]he full details of the specific infrastructure Defendant used to execute this scheme will be the subject of discovery." FAC ¶ 109.

Based on these allegations, Plaintiffs filed this putative nationwide class action on December 23, 2025, asserting a single cause of action for violation of the DMCA's anti-

---

[3] Plaintiffs also allege that "[m]ost YouTube videos are not registered with the U.S. Copyright Office." *Id*. ¶ 13.

[4] YouTube Terms of Service, https://www.youtube.com/t/terms (last visited July 6, 2026).

[5] "yt-dlp" is a free, open-source command-line program used to download video and audio files from YouTube and other online platforms. *See* FAC ¶ 102.

DEFENDANT BDI'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FAC; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT, CASE NO. 3:25-CV-10933-JSC

4

circumvention provision. 17 U.S.C. § 1201(a).  Following BDI's motion to dismiss, Plaintiffs amended their complaint on April 13, 2026, maintaining only the single claim.

## LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(1), plaintiffs bear the burden of establishing subject matter jurisdiction, including Article III standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Accordingly, at the motion to dismiss stage, plaintiffs must allege "specific facts plausibly explaining" why the standing requirements are met. *Barnum Timber Co. v. U.S. Env'tl. Prot. Agency*, 633 F.3d 894, 899 (9th Cir. 2011).  Lack of Article III standing requires dismissal under Rule 12(b)(1), lack of statutory standing requires dismissal under Rule 12(b)(6) for failure to state a claim. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

Rule 12(b)(6) authorizes "[d]ismissal …based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  In evaluating a complaint's sufficiency, the Court must disregard any "legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), as well as any "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

## ARGUMENT

### I.    PLAINTIFFS LACK ARTICLE III STANDING

Article III standing requires Plaintiffs to plausibly allege that: (i) they "suffered an injury in fact that is concrete, particularized, and actual or imminent;" (ii) the injury was likely caused by BDI; and (iii) that judicial relief would likely redress it. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  Plaintiffs, as the party invoking federal jurisdiction, bear the burden of alleging and ultimately establishing each element of Article III standing.  *See Lujan*, 504 U.S. at 561. Plaintiffs have not met that burden here.

The DMCA creates "a new anticircumvention right distinct from copyright infringement." *MDY Indus., LLC*, 629 F.3d at 948.  Courts addressing DMCA claims have therefore rejected attempts to establish standing through injuries untethered from the specific alleged statutory

DEFENDANT BDI'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FAC; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT, CASE NO. 3:25-CV-10933-JSC

5

violation. *See Raw Story Media, Inc. v. OpenAI, Inc.*, 756 F. Supp. 3d 1, 6-7 (S.D.N.Y. 2024); *Callahan v. Ancestry.com Inc.*, 2021 WL 2433893, at \*5 (N.D. Cal. June 15, 2021); *Y.H. v. Blizzard Ent., Inc.*, 2024 WL 5431490, at \*4 (C.D. Cal. Aug. 14, 2024); *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 849 (N.D. Cal. 2023). In particular, Section 1201(a) "is targeted at circumvention, it does not apply to the use of copyrighted works after the technological measure has been circumvented." *MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361, 366 (5th Cir. 2010); *accord Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 443 (2d Cir. 2001). Accordingly, Plaintiffs asserting a Section 1201(a) claim must plausibly allege an injury traceable to the alleged circumvention of an access control, not just downstream use of their videos. *See Lujan*, 504 U.S. at 560-61.

Plaintiffs have not done so here. The FAC alleges a series of purported economic injuries—lost advertising revenue, lost YouTube Premium revenue, diminished monetization eligibility, reduced algorithmic amplification, market harm, and "loss of control" over copyrighted works. FAC ¶¶ 121-128.[6] Those injuries stem from the alleged copying, training, and other downstream exploitation of the videos—not the act of circumvention itself. That matters because those alleged harms are classic copyright injuries, not injuries from circumvention of an access control. *See MDY Indus., LLC*, 629 F.3d at 948. Indeed, the FAC's prayer for relief likewise seeks an injunction requiring BDI to "cease infringing" Plaintiffs' "exclusive rights" in "copyright-protected content." FAC, Prayer for Relief ¶¶ B, D. Because Plaintiffs only identify harms allegedly resulting from downstream use after access had already been obtained, they lack standing to bring the only claim they have asserted.

## II.    PLAINTIFFS LACK STATUTORY STANDING

Plaintiffs also lack statutory standing. While Section 1203(a) provides that "[a]ny person injured by a violation of section 1201 or 1202 may bring a civil action," 17 U.S.C. § 1203(a), the DMCA's anti-circumvention provisions are "directed at the circumvention of copyright owners'

---

[6] Plaintiffs further concede that most of the videos at issue are not registered with the U.S. Copyright Office, FAC ¶ 84, and they accordingly cannot assert any claim under the Copyright Act. As set forth below, this makes any allegations regarding BDI's downstream use of the videos for AI training irrelevant to the only cause of action Plaintiffs have asserted.

DEFENDANT BDI'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FAC; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT, CASE NO. 3:25-CV-10933-JSC

6

technological measures." *MDY Indus., LLC*, 629 F.3d at 942.  Here, however, Plaintiffs admittedly do not own, operate, deploy, maintain, configure, or control any of the TPMs they seek to enforce.

Decisions interpreting Section 1201 support the conclusion that statutory standing flows from ownership or control of the technological measure allegedly circumvented—not merely ownership of protected content hosted on a third-party platform.  *See VidAngel LLC v. ClearPlay, Inc.*, 703 F. Supp. 3d 1329, 1335-36 (D. Utah 2023); *Echostar Satellite L.L.C. v. Viewtech, Inc.*, 543 F. Supp. 2d 1201, 1205-06 (S.D. Cal. 2008).  That is consistent with the broader principle that a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin,* 422 U.S. 490, 499 (1975).

Here, Plaintiffs repeatedly acknowledge that the alleged TPMs—including the "rolling cipher," IP-blocking infrastructure, session-bound URLs, CAPTCHA systems, and proof-of-origin tokens—are designed and controlled exclusively by YouTube.  FAC ¶¶ 37, 45-64, 102, 116 (referring to TPMs as "YouTube's TPMs" and acknowledging that YouTube's controls are a product of YouTube's own "proprietary" logic).[7]  And the same YouTube Terms of Service the FAC cites expressly provide that YouTube may "add[] or remov[e] features and functionalities," "alter or discontinue the Service," and make changes to "prevent illegal activities on or abuse of [YouTube's] systems."  Whether YouTube has elected to enforce, modify, or relax those measures (in whole or in part, for particular users, or at particular times) is a matter committed to YouTube's sole discretion under its Terms.  To the extent Plaintiffs may benefit from YouTube's decisions regarding those measures (FAC ¶ 157), that does not confer standing to enforce those restrictions under Section 1201(a).[8]

Accepting Plaintiffs' theory would radically expand Section 1203 by transforming every creator who uploads content to a third-party platform into a private enforcer of platform-owned technological restrictions.  Nothing in the text or structure of Section 1201 supports such a result. Plaintiffs' claim should be dismissed for lack of statutory standing.

---

[7] Indeed, Plaintiffs do not even allege that they know the exact nature of YouTube's controls. Instead, as they concede, those systems are "proprietary" to YouTube.  FAC ¶¶ 50, 52, 102
[8] YouTube Terms of Service, YouTube, https://www.youtube.com/t/terms (last visited July 6, 2026).

**III.    PLAINTIFFS FAIL TO ALLEGE CIRCUMVENTION OF ACCESS CONTROLS UNDER SECTION 1201(A)**

Section 1201 draws a critical distinction between (a) TPMs that control access to a work in the first instance and (b) those that regulate copying or use after access has been granted. Because only the former are actionable under Section 1201(a)(1), Plaintiffs' claim critically depends on whether YouTube's alleged TPMs are access controls. 17 U.S.C. § 1201(a)(1). Plaintiffs' own allegations confirm that they are not. The measures on which the FAC relies regulate downloading, automated retrieval, and retention of copies. FAC ¶¶ 33, 37. While district courts have reached differing conclusions on whether measures of this kind qualify as access controls, the statute's text and structure, the better-reasoned authority, and Plaintiffs' own allegations all confirm that these are copy controls beyond the reach of Section 1201(a).

**A.    Section 1201(a) Applies Only to Technological Measures That Effectively Control Access to Protected Works**

As explained above, Section 1201 establishes two separate types of technological measures: those that restrict unauthorized access to protected "works, and those that restrict unauthorized copying" but only prohibits circumvention of the former. 1998 USCO DMCA Summary at 3-4; *see also* S. Rep. No. 105-190, at 1112 (1998); H.R. Rep. 105-551, pt. 1, at 18-19 (1998); *Elcom Ltd.*, 203 F. Supp. 2d at 1119. Congress prohibited circumvention of access controls because "prior to this Act, the conduct of circumvention was never before made unlawful."[9] S. Rep. No. 105-190, at 12. But because "copyright law has long forbidden copyright infringements," "no new prohibition was necessary" for circumventing copy controls. *Id.*; *see also* U.S. Copyright Office, *Section 1201 of Title 17: A Report of the Register of Copyrights*, at 8-10 (June 2017) ("USCO Section 1201 Report").

*Access controls*. Section 1201(a)(3)(B) defines a measure that "effectively controls access" as one that, "in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." 17

---

[9] As defined in the DMCA, to "circumvent" generally refers to acts such as avoiding, bypassing, removing, deactivating, or impairing a TPM. *See* 17 U.S.C. § 1201(a)(3)(A), (b)(2)(A).

DEFENDANT BDI'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FAC; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT, CASE NO. 3:25-CV-10933-JSC

8

U.S.C. § 1201(a)(3)(B); *Synopsys, Inc. v. InnoGrit, Corp.*, 2019 WL 4848387, at *7 (N.D. Cal. Oct. 1, 2019); *CDK Glob., LLC v. Tekion Corp.*, 2025 WL 1939951, at *9 (N.D. Cal. July 15, 2025); USCO Section 1201 Report at 8-10.  In construing that language, courts have held that Section 1201(a)(1) "should be interpreted narrowly to exclude technologies that permit access to copyrighted work but restrict copying".  *Hattler,* 2017 WL 11634742, at *8.  Accordingly, courts have held that circumvention of an access control typically requires the defeat of a genuine technological gate that prevents a user from viewing or opening the work at all.  *Disney Enters., Inc. v. VidAngel, Inc.,* 869 F.3d 848, 852, 864–65 (9th Cir. 2017) (allegations regarding circumvention of encryption-based TPMs governing access to motion pictures to "rip" digital copies).  Examples include bypassing encryption, defeating password authentication, cracking license-key systems, or circumventing software controls that must be satisfied before the work can be accessed.  *Nintendo of Am., Inc. v. Chan*, 2009 WL 2190186 at *4 (C.D. Cal. July 21, 2009) (gaming console security system required to access copyrighted game code); *Synopsys, Inc.,* 2019 WL 4848387, at *7 (encrypted control code); *CDK Glob., LLC v*, 2025 WL 1939951, at *9 (hardware and firewalls); USCO Section 1201 Report at 8-10.

Put differently, an access control is the "electronic equivalent of breaking into a locked room," not a mechanism that merely discourages or complicates copying after the work is already available for viewing.  *Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 316–18 (S.D.N.Y. 2000) (quoting H.R. Rep. 105-551, pt. 1, at 17 (1998)); *see also Universal City Studios, Inc.*, at 443 (analogizing to locks).  In each case, the technological measure operated as a digital lock: absent circumvention, the user could not access the work.[10]

*Copy controls*.  By contrast, Section 1201(b) addresses measures that "effectively protect[] a right of a copyright owner," such as reproduction or copying after a user has gained access.[11]  17

---

[10] Congress also recognized that the new anti-circumvention right required limits.  Section 1201(a)(1)(B)–(D) authorizes the Library of Congress to exempt certain classes of works from the prohibition on circumvention where the public's right to access outweighs the owner's interest in restricting access.  *See* 17 U.S.C. § 1201(a)(1)(B)–(D).  This exemption mechanism underscores that Congress carefully calibrated Section 1201(a) to protect genuine access controls—not to create a sweeping prohibition on all forms of copying or downloading.

[11] Those exclusive rights are reproduction, distribution, public performance, public display, and creation of derivative works.  17 U.S.C. § 106.  Historically speaking, preventing "access" to a

U.S.C. § 1201(b)(1)(A). These copy controls protect against unauthorized uses of a work once access has been lawfully obtained. They include measures to prevent digital copying. Critically, copy controls do "nothing to prevent access to the plain text of the work." S. Rep. No. 105-190, at 12 (1998). Accordingly, they can include technological measures that allow some forms of 'access' but restrict other uses of the copyrighted work," such as "streaming media, which permits users to view or watch a copyrighted work but prevents them from downloading a permanent copy of the work." *Hattler*, 2017 WL 11634742, at *6 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 545 (6th Cir. 2004), *abrogated on other grounds by eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388 (2006), *as recognized by RJ Control Consultants, Inc. v. Multiject, LLC,* 100 F.4th 659, 667 (6th Cir. 2024)). As noted above, it is undisputed that Section 1201 does not prohibit circumvention of copy controls.

| 17 U.S.C. § 1201 | Circumvention Prohibition? | Trafficking Prohibition? |
| --- | --- | --- |
| Access Controls | Yes<br><br>§ 1201(a)(1) | Yes<br><br>§ 1201(a)(2) |
| Copy Controls | No | Yes<br><br>§ 1201(b) |

**B.      Plaintiffs Allege Nonactionable Copy Controls, Not Access Controls**

Plaintiffs' theory would erase the statutory distinction Congress deliberately created between access controls and copy controls. The FAC repeatedly labels YouTube's systems "access" controls (using the phrase "access" 125 times), but repetition is no substitute for substance. Looking at the actual substance of Plaintiffs' allegations, they describe restrictions on downloading, automated retrieval, retention of copies, and other post-access uses of content. Those are copy controls, not technological barriers controlling whether users may access the videos in the first instance.

Plaintiffs never allege, however, that a typical user viewing any of YouTube's free-to-watch videos, let alone their own, must overcome a paywall, password, authentication gate, license key,

protected work in and of itself has not been a right arising from the Copyright Act. *MDY Indus.*, 629 F.3d at 944.

encryption barrier, or any other technological restriction before perceiving the works themselves. Indeed, the FAC openly concedes that users may freely view the videos at issue through YouTube's ordinary streaming platform. FAC ¶ 33 (noting that users "can watch and listen to videos for free" through YouTube's ad-supported service). And, by uploading their videos to YouTube, Plaintiffs grant YouTube users a worldwide license to access and view those videos through the platform.

Plaintiffs try to get around these facts by arguing that a user who is authorized to watch a video nevertheless lacks "access" to that work unless the user can also retrieve the underlying media file. Accordingly, Plaintiffs allege that YouTube limits downloading, bulk extraction, retention of copies, and what they repeatedly describe as "file-level access" to video content. FAC ¶¶ 40-64, 95, 141. Plaintiffs frequently refer to "file-level access," "underlying media files," "underlying audiovisual files," and the work's "machine-readable embodiment." *See, e.g.*, FAC ¶¶ 44, 47, 50-52, 95, 141. In so doing, they seek to narrow the statutory meaning of access to a protected work to require access to a digital file in which that work is embodied. The statute imposes no such requirement. Section 1201(a) addresses access to protected works, not a particular file format. Otherwise, virtually every restriction on downloading could be recast as an access control, erasing the careful distinction Congress drew between access and copy controls.

Courts have repeatedly applied that distinction. In *Hattler,* for example, the plaintiff alleged that defendants downloaded audiovisual works from publicly accessible streaming sites by "circumvent[ing] the controls intended to limit access." 2017 WL 11634742, at *3. The defendants did not dispute that downloading required them to circumvent technology designed to prevent that form of access. *Id*. at *6. Even so, the court dismissed the Section 1201(a)(1) claim because the works were publicly available for streaming and the alleged measures restricted copying, not access. *Id*. at *8. There, "because it [was] uncontested that the Works are accessible to the public on many websites," the court held that amendment would be futile. *Id.*

Likewise, in *Lasica v. Am. Online, Inc.*, the plaintiff posted a photograph on Flickr.com "pursuant to a restrictive license agreement with all users of Flickr.com" that precluded commercial use. 2015 WL 12791495, at *4 (C.D. Cal. Sep. 3, 2015). Plaintiff claimed the defendant acted outside that license by using the photograph in an article published on its website. *Id.* The court

indicated that the Section 1201 claim was subject to dismissal with prejudice because the plaintiff had already provided access to the photograph "to Defendant as well as the general public—through Flickr.com."[12] *Id.* at *5. The alleged problem was therefore not access to the work, but the allegedly improper use of a work to which access had been provided. As the court explained, "a person who engages in prohibited usage of a copyrighted work to which he has lawful access does not fall afoul of any provision of Section 1201." *Id.* (quoting *Ass'n for Info. Media & Equip. v. Regents of the Univ. of California*, 2012 WL 7683452, at *9 (C.D. Cal. Nov. 20, 2012)).

Here, as noted above, Plaintiffs concede the videos are publicly accessible for viewing. *Compare* FAC ¶ 33 ("YouTube's 'users' . . . can watch and listen to videos for free on YouTube's ad-supported service . . . .") *with Hattler,* 2017 WL 11634742, at *6 (works at issue "were publicly available for streaming"). And they allege that the purportedly circumvented TPMs controlled downloading—not access. *Compare* FAC ¶ 6 (alleging "Defendant used a video-downloading program combined with virtual machines that rotated IP addresses to avoid detection and blocking") *and* FAC ¶ 34 (alleging "[t]o enforce its prohibitions on downloading content, YouTube uses technological processes and tools to detect and block access to files for unauthorized downloading") *with Hattler,* 2017 WL 11634742, at *5 (alleging defendants "downloaded the Works in a manner that circumvented the technological protections on the websites where the Works were available for streaming"). The FAC alleges that these systems regulate how users "retrieve" content, how frequently they may make requests, whether requests originate from approved environments, and whether users may obtain persistent copies of the content. *See, e.g.,* FAC ¶¶ 45-64, 97, 102-106, 115, 122-123. Plaintiffs allege that these systems respond to downloading activity, repeated requests, automated traffic, or attempts to retain copies outside YouTube's preferred playback environment. FAC ¶¶ 34, 43-64. None of that describes a technological measure that prevents users from accessing or perceiving the videos in the first instance. A system reacting to user behavior after access has been granted is fundamentally different than a measure that controls access itself. Only the latter falls within the scope of Section

---

[12] The court made this finding in the context of a tentative ruling, following which the plaintiff withdrew its DMCA claims. *See Lasica.,* 2015 WL 12791494, at *1.

1201(a).

Plaintiffs try to get around this problem by shoehorning "downloading" into "unauthorized access" to data files. *See, e.g.,* FAC ¶ 48. That is unavailing because "downloading" is a form of "reproduction." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013). A prohibition on downloading thus protects a copyright holder's exclusive right of reproduction under Section 106—not the right to control access to the work. *See MGE UPS Sys., Inc.*, at 366. And "[b]ecause § 1201(a)(1) is targeted at circumvention, it does not apply to the use of copyrighted works after the technological measure has been circumvented." *Id.* Such a complaint must be brought, if at all, under the Copyright Act, not the DMCA's anti-circumvention provision.

### C.    None of the Specific TPMs Alleged Control Access

The FAC's new allegations underscore the fundamental problems with Plaintiffs' claim. The FAC identifies five categories of alleged TPMs: "(1) an obfuscated signature system commonly referred to as a 'rolling cipher,' (2) IP-based blocking and rate limiting that restrict high-volume automated access, (3) short-lived, session-bound streaming URLs, (4) CAPTCHA human-verification challenges triggered by automated activity, and (5) proof-of-origin tokens that verify requests originating from authorized client environments." FAC ¶ 45. As an initial matter, the fact that Plaintiffs label these measures "digital locks" or "access controls" does not change what they are or expand Section 1201(a)'s scope to encompass them. *See Hattler*, 2017 WL 11634742, at *8. What matters is not the label Plaintiffs attach to those measures, but what they actually do. All of those measures regulate downloading, request volume, automation, playback conditions, and file retrieval. None of them restrict access in the first instance. As a result, none of them are access controls.

*Rolling cipher systems*. Plaintiffs allege that YouTube's "rolling cipher" controls access to the "underlying media file" by withholding a "usable file location" unless the requesting client transforms an "obfuscated signature parameter." FAC ¶ 50. Plaintiffs do not allege that the rolling cipher prevents users from viewing the videos. To the contrary, they acknowledge that users may freely watch those videos through YouTube's platform. FAC ¶¶ 33, 37. They allege, however, that the cipher impedes "external access to the underlying YouTube files" and "inhibits access to

the underlying audiovisual files for the purposes of any downloading, copying or distribution." FAC ¶¶ 50-51. Those allegations describe measures that regulate how users obtain copies, not threshold access to the videos themselves.

*IP blocking and rate limiting.* Plaintiffs also rely on YouTube's IP blocking and rate limiting systems, which they allege monitor "excessive or abusive request patterns," detect "abnormal request volume," and block IP addresses that exceed defined thresholds. FAC ¶¶ 53-54. By Plaintiffs' own description, these systems respond to high-volume or automated behavior. They do not prevent users from viewing the works in the first instance; they regulate continued platform use after YouTube detects abnormal activity. Courts have recognized that comparable traffic-management and anti-abuse systems are not access controls under Section 1201(a).[13] *See CouponCabin LLC v. Savings.com, Inc.*, 2016 WL 3181826, at *6 (N.D. Ind. June 8, 2016) (alleged technological "safeguards," including IP monitoring blocks, did not plead an effective access control because site remained publicly accessible and no technological gate, such as a password restricted access).

*Session-bound URLs.* Plaintiffs also point to YouTube's use of "session-bound, short-lived media URLs" that are "temporary," "cryptographically signed," and tied to a "particular playback session and client context." FAC ¶ 55. Plaintiffs allege that, when a URL expires, "new authorization must be obtained to retrieve" the file, and that automated scraping tools can maintain access by "repeatedly obtain[ing] fresh authorization parameters and regenerat[ing] valid media URLs." FAC ¶¶ 55-56. That is not an access control either. Those allegations confirm that the measures regulate how users retrieve media files and whether users can obtain downloadable copies outside YouTube's ordinary playback environment. They do not regulate whether users may access the works themselves, and indeed users may freely watch the videos notwithstanding the alleged

---

[13] In fact, the Copyright Office has also rejected the argument that rate-limit enforcement systems effectively control access to a work. *See* U.S. Copyright Off., *Section 1201 Rulemaking: Ninth Triennial Proceeding to Determine Exemptions to the Prohibition of Circumvention, at 125* (Oct. 2024) https://www.copyright.gov/1201/2024/2024_Section_1201_Registers_Recommendation.pdf; *see also* Exemption to Prohibition on Circumvention of Copyright Protection Systems for Access Control Technologies, 89 Fed. Reg. 85437, 85437 (Oct. 28, 2024) (final rule adopting Copyright Office's recommendations).

URL restrictions, FAC ¶¶ 33, 37.

*CAPTCHA challenges*. Plaintiffs allege that CAPTCHA challenges "perform a gatekeeping function by prohibiting a certain type of user (a bot) from accessing the platform and the audiovisual works." FAC ¶ 57. CAPTCHA challenges are triggered "[w]hen traffic patterns indicate automated or suspicious activity," and may temporarily stop the "requesting client" from making additional requests. FAC ¶¶ 57-58. But the FAC does not allege that users must solve a CAPTCHA challenge before viewing Plaintiffs' videos. Instead, CAPTCHA is allegedly triggered only by suspicious traffic patterns. That makes it a traffic-management tool, not an access control.

*Proof of Origin Tokens*. Finally, Plaintiffs allege that YouTube uses proof-of-origin tokens to confirm that requests for video segments originate from an "authorized YouTube playback environment." and "condition[s] the delivery of audiovisual file data" on those tokens. FAC ¶¶ 61, 64. According to Plaintiffs, entities must use automated tools to "extract, replicate, spoof, or systematically reuse token parameters generated within authorized sessions" in order to retrieve audiovisual files at scale. FAC ¶ 62. The tokens do not, however, prevent users from viewing the videos through YouTube's authorized player.

As Plaintiffs' own allegations confirm, none of these measures are directed at threshold viewing access, which would be subject to Section 1201(a). Instead, they regulate downloading, automation, request validation, and file retrieval of copies. A measure that governs how users obtain copies of a work after access has been granted does not become an access control merely because it makes downloading more difficult. Put differently, a "lock on the back door" does not "control[] access" where the "front door" remains open. *Lexmark Int'l, Inc.*, 387 F.3d at 547. Here, Plaintiffs concede that the front door is open because YouTube users may freely watch videos through YouTube's publicly available platform. FAC ¶ 33.

*VidAngel* clarifies the distinction. In *VidAngel*, the defendant used software to decrypt the TPMs on DVDs and Blu-ray discs containing copyrighted motion pictures. *Id.* at 853-54, 863-65. The TPMs at issue—CSS, AACS, and BD+—encrypted the copyrighted content itself so that consumers could access the movies only through licensed playback systems authorized to decrypt them. *Id.* at 853 & n.1, 863-65. The court held that VidAngel likely violated Section 1201(a)

because it defeated those encryption-based access controls and thereby obtained access to the copyrighted content. *Id*. at 863-65.

By contrast here, Plaintiffs do not allege that users must decrypt content, obtain cryptographic keys, or overcome any comparable technological gate before perceiving the works. Plaintiffs' allegations go to whether YouTube regulates downloading, automated retrieval, request validation, session management, and retention of copies outside YouTube's preferred playback environment. FAC ¶¶ 33, 37, 45–64. Those measures may impose technical friction on downloading or automated retrieval. But they do not prevent users viewing through YouTube's authorized player from perceiving the works, and therefore do not "effectively control[]" access within the meaning of Section 1201(a)(1). *Cf. In re OpenAI, Inc. Copyright Infringement Litig.*, 2025 WL 3635559 (S.D.N.Y. Dec. 15, 2025) (instructions that regulate automated web-crawler behavior do not "effectively control" access to publicly available content merely because they tell bots where they may or may not go).

Plaintiffs also allege that YouTube's Terms of Service prohibit "scraping, unauthorized downloading, bulk extraction, or other forms of data mining." FAC ¶ 65. But those Terms cannot fill the gap because contractual restrictions are not technological measures. *Dish Network L.L.C. v. World Cable Inc.*, 893 F. Supp. 2d 452, 464 (E.D.N.Y. 2012) (dismissing Section 1201(a) theory where allegations suggested a contractual violation rather than avoidance of a "digital wall"); *In re Maxim Integrated Prods., Inc.*, 2013 WL 12141373, at *19 (W.D. Pa. Mar. 19, 2013) (requiring allegations of a "technological measure to prevent access from occurring in the first place").

Plaintiffs' failure to identify *any* technological protection measure under Section 1201(a) is dispositive and requires dismissal. *See LivePerson, Inc. v. 24/7 Customer, Inc.,* 83 F. Supp. 3d 501, 511 (S.D.N.Y. 2015); *FMHUB, LLC v. MuniPlatform, LLC*, 2021 WL 1422873, at *6 (D.N.J. Apr. 15, 2021) (dismissing DMCA claim where plaintiff failed to allege that the passwords protected the same copyrighted works that the defendant allegedly accessed).

**D.      Plaintiffs Have Not Alleged TPMs that Users Must Ordinarily Overcome**

Section 1201(a)(3)(B) applies only to technological measures that, "in the ordinary course of [their] operation," require the application of information or a process to gain access to a

work. *See MDY Indus., LLC*, 629 F.3d at 952 ("Since a player need not encounter Warden to access WoW's individual non-literal elements, Warden does not effectively control access to those elements."). Thus, a technological measure, in order to be effective, must prevent *all* forms of access to a work. *See, e.g., Avaya, Inc. v. Telecom Labs, Inc.,* 2012 WL 13035096 (D.N.J. May 1, 2012)*; Digital Drilling Data Sys., LLC v. Petrolink Servs., Inc.*, 965 F3d 365, 376 (5th Cir. 2020) (a measure that restricted certain unauthorized uses of software did not "effectively control[] access" where the protected data remained stored in an open database that could be accessed without encountering that measure). That is not the case here.

Plaintiffs' own allegations establish that none of the alleged TPMs ordinarily controls a user's initial access to a YouTube video. They are conditional safeguards that apply only after access has already been obtained or when a user's subsequent conduct triggers them. As Plaintiffs acknowledge, users can "watch and listen to videos for free," but are "lock[ed] . . . from downloading copies of the work." FAC ¶ 33; *see also id.* ¶ 37 ("YouTube permits members of the public to view audiovisual works through its platform . . . ."). Moreover, none of the TPMs are encountered by every viewer or in the ordinary course of viewing a YouTube video. Each is triggered only after a user (1) has entered YouTube's authorized playback environment or (2) engages in activity beyond ordinary viewing. For example, the rolling cipher "inhibits access to the underlying audiovisual files for the purposes of any downloading, copying or distribution" but does not prevent ordinary viewing*. Id*. ¶¶ 50-52. IP blocking is triggered only in the event that YouTube detects "abnormal request volume" from a specific IP address, in which case it "conditions continued access" on compliance with YouTube's rules. *Id.* ¶¶ 53-54. Session-bound URLs do not determine whether a user may view a work in the first instance; they ensure that the underlying file remains available only through the authorized session and cannot be downloaded outside of it*. Id.* ¶¶ 55-56. CAPTCHA challenges, which are "designed to separate human users from bots," arise only when traffic patterns indicate automated or suspicious activity, governing only "further requests" or "continued platform access." *Id*. ¶¶ 57-60, 113. And proof-of-origin tokens, which are "designed to separate human users from bots," are generated only during "active, authorized playback session[s]," after the user has viewing access. *Id.* ¶¶ 61-64. In sum, because

users need not encounter any of the alleged TPMs to begin viewing the copyrighted work in the ordinary course, the TPMs do not "effectively control[] access" within the meaning of Section 1201(a).

**E.    Several Non-binding Cases Reaching a Contrary Result Misinterpret Section 1201(a)**

A handful of district court decisions have declined to dismiss Section 1201(a) claims premised on YouTube's TPMs. *See Cordova v. Huneault*, 817 F. Supp. 3d 819 (N.D. Cal. 2026); *Sony Music Ent. v. Uncharted Labs, Inc.*, No. 24-cv-4777-AKH, 2026 WL 1019199 (S.D.N.Y. Apr. 15, 2026); *Justice v. Uncharted Labs, Inc.*, No. 25-cv-5029-AKH, 2026 WL 1430232 (S.D.N.Y. May 21, 2026); *Yout, LLC v. RIAA, Inc.*, 633 F. Supp. 3d 650 (D. Conn. 2022). None is persuasive. Those decisions incorrectly erase the line Congress drew between access-control and copy-control circumvention. *See* S. Rep. No. 105-190, at 12; H.R. Rep. 105-551, pt. 1, at 18; *Hattler*, 2017 WL 11634742, at *6–8. They cannot be squared with appellate precedent that confirms that an access control must control *access*, not something else (like downloading or copying).

First, *Cordova* incorrectly suggests that public viewability is "immaterial," 817 F. Supp. 3d at 834. In fact, it's dispositive. 17 U.S.C. § 1201(a)(3)(B). The plain language of the statute makes it clear that liability turns on "access" in the "ordinary course" of operations. Thus, to be an access control, a measure must control whether users can gain access to a work. Controls over just some routes to that work, or controls that apply to just some users are not enough. Second, *Cordova*'s treatment of any measure "intended to prevent unauthorized downloading" as an access control conflicts with *MDY*'s instruction that for purposes of Section 1201(a), a measure must control *access* to the protected work. *Cordova*, 817 F. Supp. 3d at 834; *MDY*, 629 F.3d at 952–54. If *Cordova* was right, *MDY* would have turned out differently because the court there found no access control where a measure was intended to prevent unauthorized game-playing. *But see MDY Indus., LLC*, 629 F.3d at 954 (alleged "access" controls not "effective" if they leave "open the ability to access . . . [a protected work] directly…."), *see also Lexmark*, 387 F.3d at 547 (TPM that blocks some access but leaves "the literal code or text of the computer program or data freely readable" not an effective access control). Similarly, *Lexmark* would also have turned out differently. There,

the appellate court correctly held there was no access control where the measure was intended to prevent unauthorized printing. Finally, *Cordova* based its conclusion on a string cite that included cases addressing both Section 1201(a) and Section 1201(b). That conflation mistakenly treated these provisions as interchangeable even though the Ninth Circuit has confirmed that they are not. *See MDY Indus. LLC*, 629 F.3d at 946 (Sections 1201(a) and (b) are "not interchangeable");

*Sony Music* and *Justice* are also unpersuasive. In both *Sony* and *Justice,* the courts denied a motion to dismiss because, as the *Sony* court explained, the amended complaint did "not establish how [YouTube's TPMs] function sufficiently to determine their legal classification." *See Sony Music*, 2026 WL 1019199, at *3; *Justice*, 2026 WL 1430232, at *3. That misapplies the pleading standard. Plaintiffs bear the burden of alleging every material element of a Section 1201(a) claim, including the existence of a "technological measure that effectively controls access to a work." 17 U.S.C. § 1201(a)(1)(A). If the court cannot determine that a TPM is an access control, a plaintiff's anti-circumvention claim must fail as a matter of law. Moreover, as *Hattler* correctly noted, the DVD encryption cases on which the *Uncharted Labs* plaintiffs rely involve controls on initial access, not just copying.

Finally, *Yout, LLC*, 633 F. Supp.3d 650, is not binding, is currently on appeal, and resolved a different question because of its procedural posture. In that case, where Yout sought declaratory judgment that Yout's software did not violate the DMCA, the question at the pleadings stage was whether the allegations fully negated any possible claim. Based on what Yout's "anemic" showing, they did not. *Id.* at 667.

In sum, none of those decisions grapple with the fact that, on the face of the FAC, Plaintiffs authorized worldwide viewing access through YouTube. And to the extent they treat a download-restricting measure as an access control because a file embodying the work is what gets copied, they erase the line Congress drew between access-control and copy-control circumvention. *See* S. Rep. No. 105-190, at 12; H.R. Rep. 105-551, pt. 1, at 18; *Hattler*, 2017 WL 11634742, at *6–8. That distinction is Congress's to revisit—not the courts.

**CONCLUSION**

This Court need not reach the central merits question if it concludes that Plaintiffs lack Article III or statutory standing.  If it does reach that question, it should dismiss the FAC for failure to state a claim.  Section 1201(a) targets circumvention of technological measures that effectively control access to protected works—not measures regulating copying, downloading, automated retrieval, retention of copies, or other conduct after access has already been granted.  Despite Section 1201(a)'s language and purpose, Plaintiffs seek to transform it from a narrow anti-circumvention provision into a sweeping prohibition on downloading and downstream use of publicly viewable internet content.  But Congress drew a different line, and this Court is not free to erase it.

This Court should dismiss Plaintiffs' FAC with prejudice.  Despite substantially revising their pleading, Plaintiffs still have not alleged that any qualifying access control was circumvented.  Plaintiffs' theory fails as a matter of law, they already amended once after BDI identified these deficiencies, and they still cannot state a claim under Section 1201(a).  Because amendment would be futile, BDI respectfully requests that the Court dismiss the FAC in its entirety, with prejudice.

Dated: July 6, 2026                                  Respectfully submitted,


                                                     PILLSBURY WINTHROP SHAW PITTMAN LLP

                                                     /s/ *Anne M. Voigts*
                                                     ANNE M. VOIGTS (220783)
                                                     LAURA C. HURTADO (267044)
                                                     KAYVAN M. GHAFFARI (299152)


                                                     *Attorneys for Defendant,*
                                                     *BYTEDANCE INC.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 6, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Anne M. Voigts*
ANNE M. VOIGTS (220783)

*Attorneys for Defendant,*
*BYTEDANCE INC.*

---