Rom Bar-Nissim (SBN 293356)
Rom@HeahBarNissim.com
HEAH BAR-NISSIM LLP
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: (310) 432-2836

Jarrett Lee Ellzey (*pro hac vice*)
Tom Kherkher (*pro hac vice*)
Leigh S. Montgomery (*pro hac vice*)
ELLZEY KHERKHER SANFORD MONTGOMERY LLP
4200 Montrose Street, Suite 200
Houston, TX 77006
JEllzey@EKSM.com
TKherkher@EKSM.com
LMontgomery@EKSM.com

Anne M. Voigts (220783)
PILLSBURY WINTHROP SHAW PITTMAN LLP
2400 Hanover Street
Palo Alto, CA 94304-1115
Telephone: (650) 233-4500
anne.voigts@pillsburylaw.com

Laura C. Hurtado (267044)
Kayvan M. Ghaffari (299152)
PILLSBURY WINTHROP SHAW PITTMAN LLP
Four Embarcadero Center, 22nd Fl.
San Francisco, CA 94111-5998
Telephone: (415) 983-1000
laura.hurtado@pillsburylaw.com
kayvan.ghaffari@pillsburylaw.com

(Additional counsel continued on next page)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

TED ENTERTAINMENT, INC., et al.

Plaintiffs,

v.

BYTEDANCE INC.,

Defendant.

Case No. 3:25-cv-10933-JSC

**JOINT CASE MANAGEMENT STATEMENT AND RULE 26(F) REPORT**

Judge: Honorable Jacqueline Scott Corley
Courtroom 8, 19th Floor

Amended Complaint Filed: April 13, 2026

Max L. Tribble, Jr. (SBN 326851)
Justin A. Nelson (*pro hac vice*)
SUSMAN GODFREY L.L.P
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
MTribble@susmangodfrey.com
JNelson@susmangodfrey.com

Rohit D. Nath (SBN 316062)
Michael Gervais (SBN 330731)
SUSMAN GODFREY L.L.P
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
RNath@susmangodfrey.com
MGervais@susmangodfrey.com

Morgan McCollum (*pro hac vice*)
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Fl.
New York, NY 10001
Telephone: (212) 336-8330
MMcCollum@susmangodfrey.com

*Attorneys for Plaintiffs and the Proposed Class*

Pursuant to Fed. R. Civ. P. 26(f), Civ. L.R. 16-9 and 16-10, the Standing Order for All Judges of the Northern District of California, and the Court's order setting case management conference and related deadlines, Doc. No. 36, a conference was held on September 18, 2026 between counsel for Plaintiffs Ted Entertainment, Inc. ("TEI"), Matt Fisher, and the proposed class (together, "Plaintiffs") and counsel for Defendant Bytedance Inc. ("BDI" or "Defendant"). Consistent with Rule 26(f)(2) and this Court's Order Setting Scheduling Conference in Civil Cases, the parties hereby submit this Rule 26(f) Report in advance of the Case Management Conference scheduled for October 21, 2026, at 2:00 p.m.

**A. JURISDICTION AND SERVICE**

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action alleges violations of 17 U.S.C. § 1201 et seq (the "DMCA").

No known issues exist regarding personal jurisdiction or venue.

No parties remain to be served.

**B. FACTS**

**Plaintiffs' Statement:**

Plaintiffs allege that BDI violated the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(a)(1)(A), when it unlawfully circumvented YouTube's technological protection measures ("TPMs") to access and scrape millions of audiovisual files from YouTube, including Plaintiffs' works. Congress enacted Section 1201 of the DMCA to foster a "thriving electronic marketplace for copyrighted works on the Internet." H.R. Rep. No. 105-551(I), at 9. Recognizing that creators would "hesitate to make their works readily available on the Internet" without adequate protection against piracy, S. Rep. No. 105-190, at 8, Congress passed Section 1201 to back—"with legal sanctions"—"copyright owners' use of digital walls to protect their copyrighted works from piracy." *Green v. United States Dep't of Just.*, 111 F.4th 81, 89 (D.C. Cir. 2024). Plaintiffs are exactly the kind of copyright owners Section 1201 was designed to protect: independent content creators who built businesses producing original video content for YouTube—amassing millions of subscribers and views, and earning revenue through advertising, sponsorships, and licensing—all while relying on YouTube's suite

of TPMs and Terms of Service to safeguard their works from unauthorized access.

YouTube permits users to view audiovisual works through its authorized streaming architecture, but does not provide unrestricted access to the underlying audiovisual files. YouTube deploys TPMs—including a rolling cipher, IP blocking, session-bound URLs, CAPTCHA challenges, and proof-of-origin tokens—that prevent the public from reaching raw video files on its servers. But BDI systematically circumvented those TPMs using descrambling tools like yt-dlp, combined with cycling through numerous virtual machines and a rolling pool of IPs, to obtain millions of the underlying video files that it used to build and train its AI models.

If companies like BDI can circumvent technological protections with impunity, creators like Plaintiffs will hesitate to make their works available online. That is precisely the outcome Congress enacted Section 1201 to prevent. Plaintiffs have been injured by Defendant's conduct.

**Defendant's Statement:** BDI denies Plaintiffs' allegations and denies that it violated 17 U.S.C. § 1201(a)(1)(A). The Court's October 2, 2026 Order held that the First Amended Complaint plausibly alleges Article III standing, a statutory cause of action, and circumvention of technological measures that effectively control access. Doc. No. 55. The Order addressed the sufficiency of Plaintiffs' allegations at the pleading stage, drawing reasonable inferences in Plaintiffs' favor; it did not make factual findings regarding whether BDI obtained any of Plaintiffs' works or circumvented any particular technological measure.

To prevail, Plaintiffs must establish on a developed record, among other things, the existence and operation of a qualifying technological measure; that the measure, in the ordinary course of its operation and with the authority of the copyright owner, effectively controlled access to the particular work at the relevant time; that BDI actually accessed the work under the meaning of the statute; and that BDI avoided, bypassed, removed, deactivated, impaired, decrypted, replicated, spoofed, or otherwise circumvented that measure in obtaining access to the work. Those issues require work-, measure-, and time-specific proof. The appearance of a video reference, URL, or metadata in HD-VILA-100M, Panda-70M, or HowTo100M does not itself establish that BDI possessed or downloaded the underlying audiovisual file, that it obtained the file directly from YouTube rather than from a dataset

creator or other intermediary, or that any identified tool or process was used to circumvent a TPM.

Plaintiffs must also prove that any actionable circumvention occurred within the territorial reach of Section 1201 and that each claimed injury and form of relief was caused by the alleged circumvention, rather than by alleged copying, model training, or other downstream use. Relevant factual issues therefore include the source and provenance of the datasets and any associated files; whether, when, where, by whom, and through what systems any of Plaintiffs' works were obtained; the operation and application of YouTube's alleged TPMs during the relevant period; the locations of the personnel, systems, and YouTube content-delivery infrastructure implicated in any alleged request to access or copy videos; and Plaintiffs' ownership, authorization, monetization, licensing, causation, and damages theories.

Discovery will also bear on whether and where any alleged access, downloading, or circumvention by BDI occurred, including the locations of the relevant personnel and computing systems, if any. Plaintiffs ultimately must establish that any alleged circumvention on which they seek to impose liability occurred within the territorial reach of Section 1201.

## C. LEGAL ISSUES

**Plaintiffs' Statement:**

Plaintiffs assert that the key legal issues in this matter include, but are not limited to, the following:

1) Whether BDI committed violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(1)(A).
2) Whether YouTube's technological protection measures, including its rolling cipher, IP blocking, session-bound URLs, CAPTCHA challenges, and proof-of-origin tokens, constitute measures that "effectively control access" to copyrighted works within the meaning of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a).
3) Whether BDI circumvented YouTube's technological protection measures that control access to Plaintiffs' and the putative class's copyrighted works in violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a);

4) Whether Plaintiffs may certify a class under Rule 23 of the Federal Rules of Civil Procedure;

5) Whether any affirmative defense excuses BDI's conduct;

6) The number of violations of 17 U.S.C. § 1201(a)(1)(A) for purposes of calculating statutory damages under 17 U.S.C. § 1203(c)(3)(A).

**Defendant's Statement:**

In addition to the legal issues identified by Plaintiffs, BDI identifies the following additional key legal issues in this matter:

1) Whether any of the YouTube systems alleged in the complaint (rolling cipher, IP blocking, session-bound URLs, CAPTCHA challenges, and proof-of-origin tokens) are technological measures that require the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to Plaintiffs' or putative class members' copyrighted works within the meaning of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a), including in the ordinary course of each measure's operation.

2) Whether BDI circumvented any qualifying technological measure applicable to Plaintiffs' or putative class members' works in violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a);

3) Whether any alleged circumvention occurred within the territorial bounds of the United States, and whether liability or damages may be imposed based on alleged conduct occurring outside the United States or not entirely within the United States.

4) Whether Plaintiffs can establish injury and causation attributable to any alleged circumvention, including for purposes of Article III standing and recoverable relief.

5) The amount of statutory damages permissible under 17 U.S.C. § 1203(c)(3)(A) and the Due Process Clause of the United States Constitution.

**D. MOTIONS**

***Prior Motions*****:** BDI's Motion to Dismiss Plaintiffs' Amended Complaint. Doc. No. 40.

***Pending Motions***: None.

***Anticipated Motions*****:**

**Plaintiffs' Statement:**

- **Motion for Class Certification**: Plaintiffs anticipate moving for class certification.
- **Discovery Motions**: Plaintiffs hope to resolve discovery dispute without judicial intervention, but anticipate that discovery motions may be necessary.
- **Summary Judgment**: Plaintiffs have not yet determined what issues or claims they will request to be determined by summary judgment. Following discovery, however, Plaintiffs expect to be in a better position to identify such issues or claims.

**Defendant's Statement:** BDI will oppose any motion for class certification. Plaintiffs lack Article III and statutory standing, and among other issues, Plaintiffs cannot show that common issues predominate. BDI anticipates that, following appropriate discovery, one or more issues may be suitable for resolution on summary judgment, including whether Plaintiffs can establish qualifying technological measures, actionable circumvention by BDI, the territorial applicability of Section 1201 to the alleged conduct, causation and injury, and entitlement to relief. BDI also reserves the right to bring or oppose discovery and other motions as appropriate.

## E. AMENDMENT OF PLEADINGS

Plaintiffs' original complaint was filed on December 23, 2025, Doc. No. 1, which BDI moved to dismiss on March 31, 2026, Doc. No. 25. Rather than oppose that motion, Plaintiffs filed an Amended Complaint on April 13, 2026, Doc. No. 27, which BDI moved to dismiss on July 6, 2026, Doc. No. 40. The Court denied BDI's motion to dismiss on October 2, 2026, Doc. No. 55. The Parties' respective positions regarding further amendments are below:

**Plaintiffs' Statement:** Plaintiffs do not currently anticipate further amendments to the pleadings, but reserve their right to do so consistent with the Federal Rules of Civil Procedure and the Civil Local Rules of this Court.

**Defendant's Statement:** The Court denied BDI's motion on October 2, 2026. Per the parties' stipulation, BDI's Answer to Plaintiffs' First Amended Complaint is due November 16, 2026. Plaintiffs

have already amended once as a matter of right; BDI opposes any further amendment.

**F. EVIDENCE PRESERVATION**

The Parties are aware of their evidentiary preservation obligations. The Parties certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI") and have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to issues in this action, including without limitation negotiating a stipulated ESI protocol and protective order and will continue to meet and confer regarding those issues. The Parties have agreed to take reasonable steps to preserve documents and ESI potentially relevant to this case. The Parties confirm that they are unaware of any source of ESI that is reasonably expected to be subject to discovery that has been destroyed, not maintained or is not reasonably accessible. The Parties are currently discussing an ESI protocol, and will continue to meet and confer concerning ESI.

**G. DISCLOSURES**

The parties exchanged initial disclosures on October 2, 2026.

**H. DISCOVERY**

***Discovery Taken to Date*:** Plaintiffs served their first discovery requests on October 7, 2026.

***Production of Electronically Stored Information & Other Proposed Orders*:** The Parties intend to meet and confer regarding a stipulated ESI order and protective order.

***Discovery Disputes*:** There are no current discovery disputes.

***Proposed Limitations or Modifications of the Discovery Rules*:** The Parties have not yet conferred regarding applicable limits for discovery.

***Scope of Anticipated Discovery*:**

**Plaintiffs' Statement:** Plaintiffs intend to seek discovery relating to the allegations set forth in the Amended Complaint. Plaintiffs anticipate serving Requests for Production, Interrogatories, and Requests for Admission on BDI. Plaintiffs also intend to seek third-party discovery from YouTube regarding its TPMs and its Partner Program. Plaintiffs may seek the following categories of documents, electronically stored information, or tangible things to support their claims and defenses: (1)

Defendant's repositories of data containing videos and other audiovisual content obtained from YouTube; (2) Defendant's training data used to develop and train its AI models; (3) Documents relating to Defendant's use of yt-dlp, IP rotation, and other tools or techniques to access, download, and use materials for training; (4) Defendant's prospective and actual agreements with third parties, if any, to obtain and/or license materials for training. Plaintiffs reserve the right to seek discovery on additional topics and non-parties in the Action.

Plaintiffs also intend to take depositions, including of: (1) current or former BDI employees or other personnel involved in or aware of the accessing, scraping, and downloading of audiovisual files from YouTube; (2) current or former BDI employees or other personnel involved in developing and commercializing BDI's AI models; (3) any expert(s) disclosed by BDI; (4) BDI's corporate representative(s); (5) a corporate representative from YouTube pursuant to a third-party subpoena. Plaintiffs reserve the right to depose additional witnesses as discovery proceeds.

**Defendant's Statement**: BDI anticipates fact and expert discovery directed to the elements of Plaintiffs' sole Section 1201(a) claim, BDI's defenses, class certification, and the requested relief. From Plaintiffs, BDI expects to seek discovery concerning ownership and licensing of the works they contend are at issue; the identification of each work allegedly obtained by BDI and the factual basis for that contention; Plaintiffs' uploading and use of YouTube; permissions or authorizations granted to YouTube or others; the TPMs on which Plaintiffs allegedly relied; and Plaintiffs' alleged injuries and damages. That discovery will include whether each named Plaintiff participated in the YouTube Partner Program during the relevant period, the monetization status and revenue history of each allegedly affected video, whether any alleged machine retrieval displaced a monetized human view, Plaintiffs' relevant licensing history, and the factual and expert basis for the claimed advertising, Premium, algorithmic, market, licensing, loss-of-control, statutory, or actual damages.

BDI also expects to seek third-party discovery from YouTube and/or Google regarding the design, purpose, operation, implementation, enforcement, and changes over time of the rolling cipher, proof-of-origin tokens, session-bound URLs, CAPTCHA, IP blocking, and rate limiting; whether and how each measure operated in the ordinary course of viewing; whether it applied to the specific videos

at issue at the relevant time; whether it controlled access to a work, downloading or copying, platform activity, or some combination of those functions; the authorization under which YouTube implemented those measures; the distinction between ordinary streaming and automated retrieval; and the YouTube server, cache, edge node, or other content-delivery infrastructure that received and responded to any alleged request, including its geographic location.

Consistent with its initial disclosures, BDI anticipates discovery concerning the source, provenance, contents, licensing, distribution, and availability of HD-VILA-100M, HowTo100M, and Panda-70M, including from Microsoft and/or Microsoft Research Asia, Antoine Miech and other HowTo100M personnel, and Snap Inc. Relevant issues include what video files, metadata, URLs, or other materials each dataset contained or made available; how source videos were collected; how third parties could obtain the datasets or associated content; whether any audiovisual files were furnished by a dataset creator or other intermediary; and the relationship between HD-VILA-100M and Panda-70M. Discovery concerning BDI may also address whether and how BDI accessed, received, or possessed any relevant dataset or associated video, the tools or processes involved, and the geographic location of any involved personnel and systems. This description is not an admission that BDI accessed or possessed any particular dataset or video, downloaded any work from YouTube, used any alleged tool, or circumvented any TPM.

Plaintiffs' disclosures identify broad discovery concerning BDI AI models, model development and commercialization, training data, revenues and profits, and internal legal awareness. Those categories sweep well beyond discovery directed to the alleged circumvention underlying Plaintiffs' Section 1201 claim. Discovery should remain tied to the elements of the pleaded Section 1201 claim and any legally recoverable relief. Broad discovery into AI-model development, downstream use, or commercial revenues is irrelevant to whether circumvention occurred or caused a recoverable injury. BDI reserves all objections based on relevance, proportionality, burden, confidentiality, privilege, and territorial limitations.

## I. CLASS ACTIONS

This is a putative class action. As required by Civil Local Rule 16-9(b), all attorneys of record

certify that they have reviewed the Procedural Guidance for Class Action Settlements.

**Plaintiffs' Statement:**

Class certification is appropriate because BDI's conduct is common to the class, and the evidence needed to prove Plaintiffs' claims is common to the class. Plaintiffs believe that the class is so numerous that joinder is impracticable, though its exact size is within the Defendant's exclusive control. Plaintiffs intend to move to certify a class under Fed. R. Civ. P. 23(b)(3), Fed. R. Civ. P. 23(b)(2), and/or Fed. R. Civ. P. 23(c)(4). The Amended Complaint defines the class as "[a]ll persons and entities whose videos were posted on YouTube and that Defendant accessed at the file level by scraping, downloading, or otherwise extracting underlying video files from YouTube." Excluded from the proposed class are Defendant; any affiliate, parent, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any officer, director, or employee of Defendant; any successor or assign of Defendant; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse and immediate family members; and members of the judge's staff.

Consistent with Rule 23(c)(1)(B)-(C), Plaintiffs may modify this definition of the putative class when moving for class certification. Plaintiffs reserve the right to seek certification of subclasses or alternative classes as shall become necessary in the course of litigation.

Publicly available information indicates that BDI accessed, downloaded, scraped, copied, compiled, and used video files in bulk, not in a manner individualized by content creator or owner. Thus, Plaintiffs' and Class Members' claims turn on common questions of fact and law, and that those issues predominate over any question affecting only individual class members, including:

a. Whether YouTube's TPMs effectively control access to Plaintiffs' works;

b. Whether Defendant circumvented those TPMs by using an automated tool to access, download, or otherwise obtain unauthorized access to the Plaintiffs' and Class Members' original content on YouTube;

c. Whether Defendant intentionally bypassed or avoided YouTube's TPMs in obtaining Plaintiffs' and Class Members' audiovisual works;

d. Whether Defendant's access of the video content was intended to bypass the TPMs put

in place by YouTube at the authorization of Plaintiffs and Class Members;

e. Whether Defendant employed common tools, processes, and methods to obtain YouTube-hosted audiovisual works in bulk;

f. Whether Plaintiffs and Class Members are entitled to actual damages, statutory damages, and/or injunctive relief and the scope of that relief.

**Defendant's Statement:** BDI disputes that Plaintiffs can satisfy the requirements to certify a class under Federal Rule of Civil Procedure 23. The Court's pleading-stage ruling did not resolve any Rule 23 issues or whether Plaintiffs can establish class membership, standing, injury, causation, or damages on a class-wide basis. Those issues require individualized, video-specific evidence, including which putative class member owned or licensed each video; whether the video was referenced in a relevant dataset; whether BDI actually obtained the underlying audiovisual file; the source and manner of any acquisition; which TPM, if any, applied to the video at the relevant time and how it operated; whether and how that measure was circumvented; where any alleged circumvention occurred; the member's YouTube monetization status and revenue history; any authorization or licensing; and the nature and amount of any injury.

These variations also bear on whether the named Plaintiffs' claims are typical of the proposed class and whether they can adequately represent the interests of absent class members, whether common issues predominate, whether the proposed class is identifiable and manageable, whether class treatment is superior, and whether any injunctive relief could be awarded on a class-wide basis. BDI reserves all rights to oppose certification under Rules 23(a), 23(b), and 23(c), and to seek appropriate sequencing of class and merits discovery.

## J. RELATED CASES

Plaintiffs have filed similar claims against other defendants, but the lawsuits are not related. Indeed, Judge Davila has already determined that two of those cases, *Ted Entertainment, Inc. v. Nvidia Corp.*, 25-cv-10287-EJD (N.D. Cal.) and *Ted Entertainment, Inc. v. Meta Platforms, Inc.*, 25-cv-10931-JST (N.D. Cal.) are not related. *See Nvidia Corp.*, 25-cv-10287-EJD (N.D. Cal.), Doc. No. 79 (Sept. 8, 2026).

**K. RELIEF**

**Plaintiffs' Statement:**

As set forth in the Amended Complaint, Plaintiffs seek a declaration that BDI has willfully circumvented the copyright protection systems of YouTube intended to protect Plaintiffs' and Class Members' audiovisual content; statutory damages up to the maximum allowed by law per violation, or in the alternative, actual damages under 17 U.S.C. § 1203(c)(2); injunctive relief, and attorneys' fees and costs under 17 U.S.C. §1203; equitable relief as is necessary to prevent or restrain infringement of Plaintiffs' and Class Members' copyright-protected content, including a preliminary and permanent injunction; an award of pre-judgment and post-judgment interest on any monetary award; and such other and further relief as the Court may deem just and proper.

Additional categories of damages may be identified as this litigation proceeds. Because any computation of damages and other relief in this action depends on documents and evidence to be produced by Defendant (including the degree of willfulness) and third-party data, as well as expert analysis, it is difficult to provide a precise range of provable damages at this stage. But Plaintiffs believe that there are likely to be numerous class members, as indicated by the hundreds of millions of videos in the respective datasets. Plaintiffs believe that they will be able to identify those class members at the appropriate time. The range of damages will depend on, *inter alia*, the size of the putative class and the number of violations of law providing for per-incident statutory damages.

**Defendant's Statement:** BDI denies that Plaintiffs or the putative class are entitled to any of the relief requested. Plaintiffs bear the burden of establishing liability under Section 1201(a), as well as their entitlement to and the proper measure of any damages or equitable relief. BDI disputes, among other things, that Plaintiffs can establish actionable circumvention of a technological measure that effectively controls access to their works, that any such circumvention occurred within the territorial reach of Section 1201(a), or that Plaintiffs suffered compensable injury caused by any alleged circumvention.

To the extent Plaintiffs seek actual damages or profits under 17 U.S.C. § 1203(c)(2), Plaintiffs must establish that the claimed damages were suffered as a result of an actionable Section 1201

violation by BDI and that any claimed profits are attributable to that violation. BDI disputes that losses or profits allegedly resulting from subsequent copying, AI training, model development, commercialization, or other downstream use are recoverable merely because Plaintiffs allege that circumvention preceded those activities. BDI likewise disputes Plaintiffs' entitlement to restitution, disgorgement, or other monetary relief beyond that authorized by Section 1203.

To the extent Plaintiffs elect statutory damages under 17 U.S.C. § 1203(c)(3), BDI disputes Plaintiffs' proposed calculation and number of statutory violations, including any contention that each video, clip, download, access, or other alleged downstream event necessarily constitutes a separate act of circumvention or separate statutory violation. Any statutory-damages award must be based on proven violations of Section 1201 and the proper statutory unit of recovery. BDI further maintains that Plaintiffs may not recover damages based on alleged conduct occurring outside the territorial reach of Section 1201.

BDI also disputes Plaintiffs' entitlement to declaratory or injunctive relief. Plaintiffs assert a claim under Section 1201(a), not copyright infringement, and may not use that claim to obtain relief directed generally at alleged infringement, AI training, or downstream use untethered to an actionable act of circumvention. Any injunctive relief must satisfy the applicable legal requirements and be appropriately tailored to conduct actionable under Section 1201. BDI further denies that Plaintiffs are entitled to attorneys' fees, costs, interest, or any other relief and reserves all defenses and objections concerning the availability, scope, and amount of any requested remedy.

**L. SETTLEMENT AND ADR**

The Parties have complied with ADR L-R 3.5, and have submitted ADR Certifications. *See* Docs. No. 49, 50. The Parties do not believe settlement discussions would be productive at this time.

**M. OTHER REFERENCES**

This case is not suitable for binding arbitration, a special master, or the Judicial Panel on MDL.

**N. NARROWING OF ISSUES**

No issues have yet been narrowed by agreement or by motion.

**O. SCHEDULING**

As reflected below, the Parties are in agreement regarding most of the proposed schedule. However, the Parties disagree on the timing of Plaintiffs' motion for class certification and class-certification expert reports. Plaintiffs contend that any expert report on which the Parties intend to rely in support of or in opposition to Plaintiffs' motion for class certification should be served contemporaneously with the motion/opposition to class certification. BDI contends that the parties should prepare and serve class certification-related expert reports in advance of Plaintiffs' motion for class certification.

**Plaintiffs** propose the following schedule for class certification and class-certification expert reports:

| Event | Plaintiffs' Proposed Dates |
|---|---|
| Deadline to file motion for class certification, with opening class expert reports to be served contemporaneously with Plaintiffs' motion | October 18, 2027 |
| Deadline to oppose motion for class certification, with opposition class expert reports to be served contemporaneously with BDI's opposition | December 17, 2027 |
| Deadline for reply ISO motion for class certification, with rebuttal class expert reports to be served contemporaneously with Plaintiffs' reply | January 31, 2028 |
| Hearing on motion for class certification / any *Daubert* motions* | March 24, 2028 |

*If any party chooses to file a *Daubert* motion with respect to the class expert reports, they may do so at the conclusion of briefing on the motion for class certification, or at any time sooner.

**BDI** proposes the following schedule for class certification and class-certification expert reports:

| **Event** | **BDI's Proposed Dates** |
|---|---|
| Plaintiffs serve opening class expert reports | October 18, 2027 |
| BDI serves opposition class expert report | December 17, 2027 |
| Plaintiffs serve expert class rebuttal reports | January 31, 2028 |
| Deadline to:<br><br>-file motion for class certification<br><br>-plaintiff/defendant to file class certification / *Daubert* motions | February 28, 2028 |
| Deadline to<br><br>-oppose motion for class certification<br><br>plaintiff/defendant file briefs in opposition to *Daubert* motions | April 28, 2028 |
| Deadline for<br><br>-reply ISO motion for class certification<br><br>-plaintiff/defendant *Daubert* class certification briefs | May 30, 2028 |
| Hearing on motion for class certification / any *Daubert* motions | June 29, 2028 |

For the remainder of the schedule, the Parties agree to the following:

| **Event** | **Joint Proposed Dates** |
|---|---|
| Initial CMC | October 21, 2026 (actual date) |

| Event | Joint Proposed Dates |
|---|---|
| Last date to file motion to amend pleadings / add parties (any such motion must be noticed for a hearing date no later than 49 days after filing) | March 26, 2027 |
| Fact discovery cutoff | August 31, 2028 |
| Plaintiffs serve expert report on merits | September 22, 2028 |
| BDI serves expert report on merits | November 21, 2028 |
| Plaintiffs serve expert rebuttal reports | January 4, 2029 |
| Close of expert discovery | February 9, 2029 |
| Deadline to file motion for summary judgment / *Daubert* motions | March 9, 2029 |
| Deadline for opposition to motion for summary judgment / *Daubert* motions | May 8, 2029 |
| Deadline for reply ISO motion for summary judgment / *Daubert* motions | June 8, 2029 |
| Hearing on motion for summary judgment | TBD |

**P. TRIAL**

Plaintiffs have demanded a trial by jury. See Docs. Nos. 1, 27. Plaintiffs estimate that trial will take approximately 5-7 days.

**Q. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

The Parties have submitted their certificates of non-party interested entities or persons. *See* Docs. Nos. 11, 41. Neither party disclosed or is aware of any conflict or interested parties at this time.

**R. PROFESSIONAL CONDUCT**

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct.

**S. OTHER MATTERS**

The Parties agree that service of correspondence, discovery and any filings (not otherwise effected through ECF) may be effected through emailing the attorneys of record.

Respectfully submitted,

DATED: October 13, 2026

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

*/s/ Kayvan M. Ghaffari*
Kayvan M. Ghaffari
Attorneys for Bytedance Inc.

*/s/ Rohit D. Nath*
Rohit D. Nath
Attorneys for Plaintiffs Ted Entertainment et al.

**SIGNATURE ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, the filer of this document, attest that all signatories have concurred in the filing of this document.

Dated:

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

By: *_/s/ Kayvan M. Ghaffari_*
Kayvan M. Ghaffari